Kathryn M. JOHNSON, Appellant–Respondent,

v.

Robert C. JOHNSON, Appellee–Petitioner.

No. 18A05–9408–CV–331.

Court of Appeals of Indiana.

July 21, 1995.

As Corrected on Denial of Rehearing Sept. 12, 1995.

---

Barbara Gasper Hines, Muncie, for appellant.

Bruce N. Munson, Muncie, for appellee.

SHARPNACK, Chief Judge.

## OPINION

Kathryn M. Johnson (hereinafter "Wife") appeals the trial court's purported *nunc pro tunc* judgment dissolving the marriage between her and Robert C. Johnson, her dead husband (hereinafter "Husband"). We reverse and remand.

Wife raises two issues, which we combine and restate as whether the trial court abused its discretion in entering a decree of dissolution of marriage to the parties eight months after the death of Husband.

The facts show that Husband and Wife were married on January 25, 1989. Husband brought into the marriage assets totalling a net worth of $126,360.00 and Wife brought a net worth of $24,500.00. A child was born of the marriage on July 27, 1989. Husband also had a child by a previous marriage.

Husband filed a petition for dissolution of marriage on November 6, 1992. The final hearing began on July 9, 1993, and concluded on August 16, 1993. Following the hearing, the trial court took the matter under advisement.

On September 20, 1993, Husband died. On October 6, 1993, Wife filed a motion to dismiss the dissolution proceedings. Husband's attorney filed a notice of pendency of probate proceedings and an objection to the motion to dismiss on October 12, 1993. On November 12, 1993, an appearance was entered on behalf of Husband's child by his previous marriage. In addition, Husband's personal representative filed a motion for substitution, (hereinafter "Husband's estate"). All pending motions were heard on

November 12, 1993. On February 2, 1994, the trial court denied Wife's motion to dismiss and ordered the parties to file proposed findings of fact and conclusions thereon regarding the distribution of property, assets, and liabilities. On May 20, 1994, the trial court denied Wife's second motion to dismiss and entered purportedly *nunc pro tunc* a decree of dissolution and order dividing the marital property. The trial court's order states that "[t]he estate of Robert C. Johnson, deceased, is entitled to a *nunc pro tunc* decree of dissolution under which the assets and liabilities of the parties are to be divided." Record, p. 167.

■ We review a division of property in a dissolution of marriage appeal for an abuse of the trial court's discretion. *In re Marriage of Sloss* (1988), Ind.App., 526 N.E.2d 1036, 1038. We must determine whether the result reached is clearly against the logic and effect of the facts and circumstances before the trial court, including any reasonable inferences drawn therefrom which are most favorable to the appellee. *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996, 998, *trans. denied.*

Wife argues that the trial court erred in entering a decree of dissolution of marriage because the death of Husband dissolved the marriage before the trial court had an opportunity to do so.

■ It has long been the law in this state that as a general rule the trial court in a divorce action loses jurisdiction over the case upon the death of one of the principals. *In re Marriage of Hilton* (1984), Ind.App., 459 N.E.2d 744, 744 (citing *State ex rel. Smith v. Delaware County Superior Court* (1982), Ind., 442 N.E.2d 978; *State ex rel. Gregory v. Superior Court of Marion County, Room No. 1* (1961), 242 Ind. 42, 176 N.E.2d 126; *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied* (1975), 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98); *see also Fitzgerald v. Travelers Ins. Co.* (1991), Ind.App., 567 N.E.2d 159, *reh'g denied, trans. denied,* and *Stoup v. Stoup* (1941), 109 Ind.App. 618, 35 N.E.2d 112. However, there are certain narrow exceptions to the general rule. *See Lizak v. Schultz* (1986), Ind., 496 N.E.2d 40; *State ex*

*rel. Paxton v. Porter Superior Court* (1984), Ind., 467 N.E.2d 1205; *State ex rel. Smith, supra.*

We find that none of the three exceptions to the general rule are applicable in the instant case. In *State ex rel. Smith* the supreme court made an exception in order to allow a surviving spouse to seek modification of a property settlement following the entry during the life of the two parties of the decree of dissolution based on the deceased spouse's fraudulent underreporting of his assets to the court. 442 N.E.2d at 980. In *State ex rel. Paxton,* although the supreme court made it clear that upon the death of one of the parties all the proceedings terminated, it made an exception to the general rule in order to allow the deceased spouse's attorney to recoup from the surviving spouse fees and expenses incurred in preparing the case. 467 N.E.2d at 1207. Finally, in *Lizak* the supreme court made an exception to the general rule in order to permit the deceased spouse's estate to have child support arrearages reduced to judgment by the dissolution court following the entry of the decree of dissolution. 496 N.E.2d at 43.

Husband's estate asserts, however, that existence of the exceptions shows that the general rule is not honored universally, and he argues that it should not be honored in this instance. *See Lizak, supra,* 496 N.E.2d at 43 (" 'general rule' seems to have been honored more in the breach"). Husband's estate contends that where competing interests are involved—in this case, the interests of the minor children in their father's property—equity dictates that the general rule should not apply. To support its argument, Husband's estate contends that other jurisdictions have rejected the common law rule in favor of an equitable approach to such property disputes. However, of the cases cited by Husband's estate to support its contention, only two cases involved a similar factual situation where the decree was not entered during the lifetime of both parties. In *Fulton v. Fulton* (1985), 204 N.J.Super. 544, 499 A.2d 542, after the parties had been separated for several years, husband sought dissolution of the marriage based on irretrievable breakdown of the marriage. *Id.* at

543. At the conclusion of testimony in the final hearing, the court refused to grant judgment dissolving the marriage, not for lack of proof as to the cause of action but because the court was not satisfied that husband was discharging his obligation to contribute to the support of his children. *Id.* Thus, the court reserved decision pending receipt of information of an inquiry into the child support matter. *Id.* Before this matter could be rescheduled for hearing, however, husband died. *Id.* Thereafter, the husband's attorney sought to have a judgment of divorce adjudicated to protect the interests of the husband's children. *Id.*

The trial court held that the

"[a]djudication of a final judgment of divorce at this time would not unjustly deprive the wife of marital assets, but to the contrary would eliminate the potential of injustice to the children insofar as the wife may receive a large portion, if not all, of the assets of the decedent based on intestacy."

*Id.* at 545. The trial court then entered a judgment of divorce *nunc pro tunc,* based on the testimony previously taken. *Id.*

The other case that involves the death of one of the parties before the decree was entered is *Carr v. Carr* (1990), 120 N.J. 336, 576 A.2d 872 *Carr* sheds light on the reasoning and conclusion of the *Fulton* court. In *Carr,* the New Jersey Supreme Court upheld the appellate court's determination that wife was not entitled to an equitable distribution of marital property under the state's divorce statute because husband's death had terminated the divorce proceedings. *Id.,* 576 A.2d at 877. Husband died before the trial of the divorce proceedings, leaving his entire estate to his children. *Id.* at 874. The trial court held that the divorce action and claims for alimony and equitable distribution were terminated by husband's death, but allowed wife to amend her complaint to pursue alternate equitable remedies. *Id.* Because wife had brought a divorce action which included a claim for equitable distribution of the marital property, the state's equitable distribution statute was invoked. *Id.* at 875. The supreme court stated that

"The courts below, correctly in our view, concluded that the equitable distribution statute does not authorize the distribution of marital assets except upon the divorce of the parties. By the plain terms of the statute, a spouse's right to share in marital property by virtue of equitable distribution 'arises when the divorce ... is entered.' The Court has consistently interpreted the statute to authorize a distribution of marital assets only on the condition that the marriage of the parties has been terminated by divorce. (citations omitted).

The current controversy arises because the marriage between the Carrs was terminated not by divorce, but by Mr. Carr's death. Divorce proceedings abate with the death of one of the parties. (citations omitted).

\*    \*    \*    \*    \*    \*

The lower courts held, and the plaintiff concedes, that the death of either party to a divorce terminates the cause of action as to the 'status of the marriage relationship' between the parties. Thus, with the death of her husband, a judgment of divorce was no longer attainable by Mrs. Carr and, derivatively, equitable distribution under the statute also became unattainable."

*Id.* Citing *Fulton, supra, inter alia,* the supreme court added that in "highly unusual circumstances," some aspects of the statutory equitable distribution and related forms of relief may survive a spouse's death before divorce. *Id.* The court concluded that those circumstances did not exist in this instance. *Id.*

Unlike New Jersey, Indiana has no equitable distribution statute that can be invoked in a divorce proceeding. Furthermore, like New Jersey, Indiana deems all divorce proceedings terminated upon the death of one of the parties, except in those instances which we already have stated do not apply in the instant case. We therefore are unpersuaded by Husband's estate's argument.

■ Husband's estate argues further that the trial court should retain jurisdiction in this instance based on Indiana's public policy favoring the survival of actions. *See* Ind.

Code § 34–1–1–1. Indiana Code 34–1–1–1, in pertinent part, provides that

> "[a]ll causes of action survive, and may be brought, notwithstanding the death of the individual who is entitled or liable in such an action, by or against the representative of the deceased party except actions for libel, slander, malicious prosecution, false imprisonment, invasion of privacy, and personal injuries to the deceased party, which shall survive only to the extent provided herein. . . ."

I.C. § 34–1–1–1.

Although not excluded by I.C. § 34–1–1–1, we are not convinced that public policy dictates survival of a dissolution action in this instance. Husband's estate urges us, however, to read Ind.Code § 31–1–11.5–11, which sets forth the process for dividing the marital property in a dissolution proceeding, in concert with I.C. § 34–1–1–1. Husband's estate argues that I.C. § 31–1–11.5–11, read together with I.C. § 34–1–1–1, does not specifically foreclose the parties—the deceased spouse's successors in interest and the surviving spouse—from resolving any property disputes in the court in which the dissolution claim was filed. In fact, Husband's estate argues that I.C. § 31–1–11.5–9(a) proves that the legislature intended dissolution actions to survive where property interests are involved in order to make a fair and equitable distribution of the marital property. Indiana Code § 31–1–11.5–9(a) provides that when a court finds that a marriage has suffered an irretrievable breakdown, "the court shall enter a dissolution decree." We disagree with the estate's argument.

One purpose of the legislature in enacting I.C. § 31–1–11.5–11 was to ensure that all property rights are settled with certainty at the time of dissolution. *Riddle v. Riddle* (1991), Ind.App., 566 N.E.2d 78, 81, *trans. denied.* The decree of dissolution is the only vehicle available to distribute marital assets. *Schnarr v. Schnarr* (1986), Ind.App., 491 N.E.2d 561, 563.

■ We believe that the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest. The property settlement is part and parcel of a final decree of dissolution. Once the marriage is ended by the death of one of the parties before the judgment is rendered, no final decree can be attained. *See: Fitzgerald v. Travelers Insurance Co.* (1991) Ind.App., 567 N.E.2d 159 at 161. Without a final decree, there can be no property settlement. Thus, we find that the trial court abused its discretion in entering a decree of dissolution.

■ Finally, Wife argues that the trial court erred in entering a decree of dissolution *nunc pro tunc.* We agree. In *Everhart v. Cooper* (1936), 102 Ind.App. 1, 200 N.E. 705, we held that unless the dissolution court had made a final determination and pronouncement before the death of one of the parties, a dissolution decree entered *nunc pro tunc* was not valid. *Id.,* 200 N.E. at 706. In the instant case, because the trial court had not made a final determination and pronouncement until after Husband had died, we find that the trial court erred in entering the decree of dissolution *nunc pro tunc.*[1]

Accordingly, we reverse and remand to the trial court with instructions to dismiss the action for lack of jurisdiction.

REVERSED and REMANDED.

RUCKER and SULLIVAN, JJ., concur.

---

1. Husband's estate claims that the trial court would have made a determination on or about August 17, 1993, rather than take the matter under advisement, had it not been for the fact that Wife presented a voluminous amount of exhibits, requiring the trial court to sift through the exhibits before making a determination. We are not persuaded by this argument.