OPINION
 

 SHARPNACK, Chief Judge
 

 Alfred Edwards appeals the trial court’s entry of a nunc pro tunc order terminating the marriage between him and his ex-wife, Sandra. Alfred raises two issues which we consolidate and restate as whether the trial court’s nunc pro tunc entry had the effect of terminating the Edwards’ marriage prior to Sandra’s death. In addition, Sandra’s estate raises two issues on cross-appeal which we consolidate and restate as whether we lack jurisdiction to decide the case. We affirm.
 

 The facts most favorable to the trial court’s order follow. In 1996, Sandra commenced her action for dissolution of her marriage to Alfred. During their marriage, Alfred and Sandra had had three children. By 1996, all but one was emancipated. The trial court held a final hearing on October 10, 1997, wherein the parties stipulated to certain agreements and the trial court ruled on all remaining issues. The court directed counsel for Sandra to provide a written decree within ten days. On October 22, 1997, Sandra died. In November 1997, Sandra’s estate filed a motion for nunc pro tune entry of a dissolution decree which the trial court later granted. The trial court’s order read:
 

 “Comes now Petitioner, Sandra Edwards [sic], by counsel, Arnold Krevitz, and comes now Respondent, Alfred Edwards, in person and by counsel, Ruman, Clements, Tobin & Holub, by Kevin Marshall, pursuant to Petitioner’s Motion for Nunc Pro Tune Entry filed herein on November 20, 1997, and set for hearing on December 18,1997.
 

 Petition submitted and arguments of counsel heai'd. The Court now finds as follows: That Petitioner’s Motion for Nunc Pro Tunc Entry be and the same is hereby granted with the exception of Petitioner’s request as stated in Paragraph 6 of Petitioner’s Motion that the Decree be amended to provide that the Mutual Restraining Order previously entered herein on November 7, 1996 be reaffirmed, continued, and extended. This request was orally withdrawn by Petitioner’s counsel on December 18,1997.
 

 It is therefore ordered, adjudged, and decreed by the Court, as follows:
 

 That the Dissolution of Marriage Decree, Wage withholding Order, and Qualified Domestic Relations Order be entered by the Court, nunc pro tunc as of October 10, 1997.
 

 
 *1157
 
 All of which is found and recommended this 6th day of January 1998.”
 

 Record, pp. 86-87.
 

 Before addressing the merits of the appeal, we address the issue raised on cross-appeal. Sandra first contends Alfred failed to timely file the record and, therefore, we lack jurisdiction to consider his appeal. Here, the trial court clerk date stamped the praecipe as being filed on January 26, 1998. The court of appeals clerk date stamped the record as being filed on April 27, 1998. The filing deadline for the record fell on Sunday, April 26, 1998. However, pursuant to Indiana Appellate Rule 13, “the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed.” Ind.App. R. 13. Thus, the period ran until the end of April 27, 1998. Despite this, Sandra contends that the record reveals that Alfred actually hand delivered the praecipe on January 23, 1998, not the 26th. We use the date file-stamped by the clerk for determining the date filed.
 
 See Cross v. State,
 
 521 N.E.2d 360, 363 n. 1 (Ind.Ct.App.1988),
 
 overruled on other grounds by Mayberry v. State,
 
 542 N.E.2d 1359, 1360-1361 (Ind.Ct.App.1989),
 
 trans. denied.
 
 Therefore, Alfred timely filed the record.
 

 Sandra next contends that Alfred’s failure to timely file the notice of appeal denies our court jurisdiction to consider the appeal. Alfred filed the notice of appeal with the record on April 27, 1998. In support of her argument, Sandra refers to App. R. 2(C)(1) which states that “[t]he notice of appeal shall be filed within fourteen (14) days of the filing of the praecipe.... ” Alfred does not dispute that he failed to file his notice of appeal within fourteen days of filing the praecipe. Rather, he argues the failure to timely file a notice of appeal does not deny our court jurisdiction. In support of his argument, Alfred cites App. R. 2(C)(2) which controls where a party fails to file a notice of appeal.
 

 The rule reads: “Failure to File. The Clerk of the Supreme Court and Court of Appeals shall not accept for filing any record, motion, or other documents of the proceedings, until the notice of appeal has been filed.” App. R. 2(C)(2). The rule clearly provides that the only consequence of not filing a notice of appeal is that other matters may not be filed until the notice of appeal has been filed. There is no provision with respect to the notice of appeal like that as to the praecipe: “Unless the praecipe is filed within such time period, the right to appeal will be forfeited.” App. R. 2(A). Therefore, the requirement to file a notice of appeal within fourteen days of the filing of the prae-cipe is not jurisdictional.
 

 We now address whether the trial court’s nunc pro tunc entry had the effect of terminating the Edwards’ marriage prior to Sandra’s death. In
 
 Cotton v. State,
 
 our supreme court explained the standard for issuing an order nunc pro tunc:
 

 “A nunc pro tunc entry is defined in law as ‘an entry made now of something which was actually previously done, to have effect as of the former date.’ Such an entry may be used to either record an act or event not recorded in the court’s order book or to change or supplement an entry already recorded in the order book. Its purpose is ‘to supply an omission in the record of action really had, but omitted through inadvertence or mistake.’
 

 The trial court’s record, however, must show that the unrecorded act or event actually occurred. Thus, this Court has required that a written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order. In order to provide a sufficient basis for the nunc pro tunc entry, the supporting written memorial
 

 (1) must be found in the records of the case; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described.’”
 

 Cotton v. State,
 
 658 N.E.2d 898, 900 (Ind.1995). Thus, the record before us must demonstrate that the trial court ordered the dissolution of the Edwards’ marriage and resolved the disposition of marital property and other pending issues at the final hearing.
 

 At the beginning of the final hearing, the parties informed the trial court that they had
 
 *1158
 
 agreed upon the parties’ assets and their respective values: namely, Alfred’s pension, Sandra’s pension, and the real estate. The trial court then summarized the exhibit containing the parties’ stipulations:
 

 “The Court: It says wife gets her pension, wife gets the real estate and then husband’s pension, she’s going to take forty thousand six hundred and forty six dollars from that, amounting to forty-eight percent of that gross pension. And on his column we put fifty-two percent of his pension, or forty four thousand two hundred thirty-eight dollars, correct?
 

 Mr. Marshall: Yeah
 

 Record, p. 162. The parties also agreed that each would retain “the personal property in their possession.” Record, p. 176. In addition, the parties stipulated to Sandra’s custody of the minor child and Alfred’s visitation. The trial court then stated, “Okay, you have your stipulations.” Record, p. 170.
 

 The remaining issues to be decided were support, maintenance and attorney’s fees. The trial court ruled upon these issues at the conclusion of the final hearing. The record read in pertinent part:
 

 “The Court: I find that the parties’ marriage is irretrievably broken and that they should be restored to the status of unmarried persons effective today. The orders contested and submitted [to] the Court for ruling are as follows: Child support shall be imposed upon the respondent to pay the sum of one hundred dollars each week as child support for the parties’ minor child. On top of that, the Court finds that the respondent owes an arrearage in the total sum of six thousand seven hundred and ninety-five dollars and that he shall pay same at an additional fifteen dollars a week.
 

 The respondent and petitioner have agreed that the respondent shall provide payment for her—to her directly of a hundred and twenty-four dollars a month for the insurance, so unless there’s an objection from the parties, we can add all that together and put an income withholding order, Mr. Marshall? The insurance is kind of questionable.
 

 Mr. Marshall: Yeah, that’s why I ask because after eighteen months pass we’re going to have to come back in and get a new order.
 

 The Court: Oh, that’s true. That’s true. Okay, so it will be a hundred and fifteen, then he’s got to pay wife directly—soon to be ex-wife, I guess. Parties will split the debts that have been disputed here today. I’m going to have Dad pay Sears and Mom pay Visa and that leaves only the issue of attorney’s fees because the Court accepts the parties’ stipulations on all other matters.
 

 The issue of attorney’s fees is simple for the Court. I believe the amount of fees charged are reasonable. It’s unfortunate that they can really amount up by a time basis, but for the fact of the matter is Mr. Krevitz put the time in and a hundred dollars an hour is more than reasonable such as he’s an attorney. I’m going to require that the respondent pay two thousand dollars even, judgment given to Mr. Krevitz. That includes the seven-fifty from earlier, so you’ll just bring the judgment forward, so you get a total two thousand dollar judgment against the respondent. And you’ll put that in the decree, you’ll prepare the decree for the Court’s signature. The parties are on the record as to their stipulations so there’s no need for them to sign it. And have I ruled upon everything currently before the Court at this time, Mr. Krevitz?
 

 Mr. Krevitz: I believe you have, your Hon- or. The only note or comment I’d like to make is an arrearage of six thousand seven hundred and ninety-five dollars payable at fifteen dollars a week will take the respondent eight years and seven months to pay, which I think is unusual.
 

 The Court: I know, it’s indeed very unfortunate. It’s usually the Court’s goal that they pay for the arrearage up within five years.
 

 Mr. Marshall: Well, I think there’s something missing here, because this child will be emancipated before the—
 

 The Court: Right, exactly what I was thinking. So at some point the child’s going to be emancipated and then he’ll
 
 *1159
 
 be making a hundred and fifteen dollars a week only on the arrearage ... Okay then, anything else, Mr. Marshall, that I haven’t ruled upon?
 

 Mr. Marshall: No, that’s all.
 

 The Court: Mr. Krevitz, you owe us a decree within ten days.
 

 Mr. Krevitz: Thank you, Judge, I will.
 

 The Court: Okay, best of luck to both parties.”
 

 Record, pp. 190-198.
 

 Here, the record indicates that the trial court did in fact rule upon the issues before it. First, the trial court asked whether it had “ruled upon everything currently before the Court_” Record, p. 197. Neither party raised additional issues. Moreover, the trial court stated that “[t]he parties are on the record as to their stipulations so there’s no need for them to sign [the decree].” Record, p. 197. We cannot imagine the trial court making this statement without the intent that it’s ruling constituted a final determination and pronouncement on the record. In fact, the court minutes from October 10,1997 read as follows:
 

 “Petitioner appears with Attorney Krevitz. Respondent appears with Attorney Kevin Marshall. Cause set for hearing on Petitioner’s Petition for Dissolution filed November 6,1996.
 

 Cause submitted. Partial agreement is recited on the record. Evidence heard. Arguments heard. Court rules on remaining issues. Attorney Krevitz to submit order within (10) days.”
 

 Record, p. 67. The partial agreement refers to the stipulations of the party. The remaining issues involved the custody, maintenance and attorney’s fees ruled upon by the trial court. Thus, the trial court’s minutes indicate that all issues had been either agreed upon by the parties or ruled upon by the trial court. Finally, the trial court stated that the marriage was to be irretrievably broken “effective today.” Record, p. 190.
 

 Despite the evidence on the record to the contrary, Alfred argues the trial court failed to issue an oral pronouncement granting the termination of the Edwards’ marriage. In support of his argument, Alfred first directs us to our decision in
 
 Everhart v. Cooper,
 
 102 Ind.App. 1, 200 N.E. 705 (1936). In
 
 Everhart,
 
 the issue was whether the trial court had actually
 
 “
 
 ‘pronounced judgment’ or whether the court had merely stated what its judgment would be.”
 
 Id.
 
 at 706. The trial court had stated: “This divorce is granted ... but judgment will not be entered until costs are paid.”
 
 Id.
 
 Costs were not paid until after husband’s death. Thus, we found that the evidence did not sufficiently demonstrate that the court had made an oral pronouncement because the trial court explicitly conditioned final judgment upon the costs being paid.
 
 Id.
 

 Here, Alfred contends the trial court conditioned the divorce upon receipt of the decree from Attorney Krevitz. We disagree. Although it requested Attorney Krevitz to present a decree within ten days, it did not explicitly condition the order on the receipt of the decree. Nor does the absence of the decree itself bar a nunc pro tunc order from being entered where the trial court did in fact rule on the issues before it.
 

 Alfred next directs us to our decision in
 
 Johnson v. Johnson,
 
 653 N.E.2d 512 (Ind.Ct.App.1995),
 
 reh’g denied.
 
 In
 
 Johnson,
 
 we held that for a nunc pro tunc order to be valid, the trial court must have made a final determination and pronouncement before the death of one of the parties.
 
 Id.
 
 at 516. In that case, the trial court had not made a final determination and pronouncement until after the husband had died. We found that:
 

 “At the conclusion of testimony in the final hearing, the court refused to grant judgment dissolving the marriage, not for lack of proof as to the cause of action but because the court was not satisfied that husband was discharging his obligation to contribute to the support of his children. Thus, the court reserved decision pending receipt of information of an inquiry into the child support matter. Before this matter could be rescheduled for hearing, however, husband died.”
 

 Id.
 
 at 515 (citations omitted). Consequently, we held that the trial court erred in entering the decree of dissolution nunc pro tunc.
 
 Id.
 
 at 516. In contrast, the trial court here did not condition the order on the receipt of any further information. Rather, the trial court ruled upon all of the issues presented to it by
 
 *1160
 
 the parties. Therefore, the facts and circumstances of this case distinguish it from both
 
 Everhart
 
 and
 
 Johnson.
 

 Finally, Alfred makes much of the trial court’s statement, “Okay, so it will be a hundred and fifteen, then he’s got to pay wife directly—soon to be ex-wife, I guess,” as indicating the trial court had not made an oral pronouncement granting the divorce decree effective that day. Alfred contends the words “soon to be ex-wife” indicate that the trial court did not intend the divorce to be official until the decree had been completed and signed. We disagree. The words were not spoken at the end of the hearing but during the hearing. Therefore, the trial court may have been referring to Sandra becoming Alfred’s ex-wife at the end of the hearing when the final pronouncement was made. Based upon the record and reasonable inferences therefrom, we find that the trial court intended to, and did in fact, issue a final, oral pronouncement of judgment terminating the Edwards’ marriage at the final hearing.
 
 [1]
 
 Therefore, the trial court did not err in granting Sandra’s motion for a nunc pro tunc entry of the dissolution decree.
 
 See Johnson,
 
 653 N.E.2d at 516.
 

 For the foregoing reasons, we affirm the trial court’s order granting Sandra’s motion for nunc pro tunc entry of the dissolution decree.
 
 [2]
 

 Affirmed.
 

 SULLIVAN, J., and HOFFMAN, J. concur.
 

 [1]
 

 . As we conclude the trial court ordered the dissolution at the final hearing prior to Sandra's death, we need not address Alfred's argument contending the trial court lost jurisdiction upon Sandra’s death.
 

 [2]
 

 . In his reply brief, Alfred argues that some aspects of the nunc pro tunc order have been rendered impossible by the death of Sandra. We do not address those issues here. It may indeed be that aspects of the order have been rendered impossible. However, the subsequent impossibility does not effect our determination of whether the trial court rendered judgment at the final hearing.