T.C. Memo. 2000-85

UNITED STATES TAX COURT

MARY K. HECKAMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5829-99.                        Filed March 13, 2000.

John J. Wernet, for petitioner.

Angela J. Kennedy, for respondent.

MEMORANDUM OPINION

ARMEN, Special Trial Judge: Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1995 in the amount of $5,970. After a concession by
respondent,[1] the issue for decision is whether certain payments

_____

    [1] Respondent concedes that petitioner is entitled to a
                                                    (continued...)

received by petitioner are includable in her gross income as alimony under section 71.[2]  We hold that they are.

Background

This case was submitted fully stipulated under Rule 122, and the facts stipulated are so found.  Petitioner resided in Chicago, Illinois, at the time that her petition was filed with the Court.

Petitioner and her ex-husband, James D. Heckaman (Mr. Heckaman), were separated on February 14, 1995.  Petitioner and Mr. Heckaman filed for divorce in the Whitley Circuit Court of Whitley County, Indiana, (the Divorce Court) later that year. Petitioner has not resided in the same household as Mr. Heckaman since their separation.  Petitioner was divorced in 1997.

In August 1995, the Divorce Court issued its "Findings of Fact and Conclusions of Law for Preliminary Orders" (the provisional order) in the divorce proceeding involving petitioner and Mr. Heckaman.  The provisional order provided as follows:

> Maintenance and Indebtedness. [Petitioner] is entitled to receive maintenance during the pendency of this action retroactive to the date of the filing of

---

[1](...continued)
dependency exemption for her daughter, Rebecca Heckaman.

[2]  Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

the Petition for Dissolution of Marriage.  The Court finds that [Mr. Heckaman] has paid $6,000.00 per month through the date of the hearing in this matter and that he is current in his maintenance and support obligation through July 7, 1995.

The Court further determines that beginning August 15, 1995, through the pendency of this action, or until the marital residence is sold, whichever first occurs, that [Mr. Heckaman] shall pay an amount of maintenance in the sum of $800.00 per week.

       *     *     *     *     *     *     *

[Mr. Heckaman] shall maintain in full force and effect the medical insurance for the family, all life insurance and disability insurance for himself and the family, automobile and home insurance for the family pending further Order of the Court.  The Court will defer until final hearing the ultimate responsibility for said expenses.

       *     *     *     *     *     *     *

[Mr. Heckaman] shall reimburse [petitioner] for all sums advanced by her for her Ivy Tech tuition, books, and fees dating from her enrollment in January, 1995.  Reimbursement to [petitioner] shall occur for all sums presently due and owing within 30 days of this Order.  [Mr. Heckaman] shall reimburse [petitioner] within 14 days for all subsequent Ivy Tech expenses.

The provisional order did not indicate how the payments made pursuant to it should be treated for tax purposes, or whether the payments would terminate at petitioner's death.

As required by the provisional order, Mr. Heckaman made a total payment of $39,365 to petitioner during the year in issue, as follows: (1) "Maintenance" payments in the amount of $36,000; (2) premiums for a life insurance policy owned by petitioner in

the amount of $1,900; and (3) reimbursement for petitioner's fall semester educational expenses in the amount of $1,465.

On her 1995 separate return, petitioner did not include in her gross income any amount as alimony or separate maintenance payments.

In the notice of deficiency, respondent determined that petitioner was required to report as gross income, pursuant to section 71, the total payment of $39,365 that she received from Mr. Heckaman during 1995.

Discussion

Section 71(a) provides that gross income includes amounts received as alimony or separate maintenance payments. See also sec. 61(a)(8). Section 71(b)(1) defines alimony or separate maintenance payments as follows:

> (1) In General.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> > (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> >
> > (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> >
> > (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same

household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If the payments received by petitioner meet the four enumerated criteria, they will be considered alimony and includable in petitioner's income. There appears to be no dispute between the parties concerning the requirements of section 71(b)(1)(A), (B), and (C). As pertinent to our discussion, a divorce decree constitutes a "divorce or separation instrument", see sec. 71(b)(2)(A), and the parties do not dispute that the provisional order of the Divorce Court constitutes a separation instrument.

On the other hand, the parties dispute whether the requirement of section 71(b)(1)(D) has been satisfied. The history of section 71(b)(1)(D) establishes that it was enacted to distinguish alimony, deductible by the payor and includable in the payee's gross income, from payments in the nature of property settlements, which are nondeductible by the payor and excludable from the payee's gross income.

In 1984, Congress revised section 71 in an attempt to minimize the differences in Federal tax consequences created by differences in State laws and to establish an objective and

uniform Federal standard as to what constitutes alimony. See

sec. 422(a) of the Deficit Reduction Act of 1984 (DRA 1984), Pub.

L. 98-369, 98 Stat. 795. See also H. Rept. 98-432, Part 2, 1495,

1496 (1984), wherein the House Ways and Means Committee

articulated the purpose of the 1984 amendment as follows:

> The Committee bill attempts to define alimony in a way
> that would conform to general notions of what type of
> payments constitute alimony as distinguished from
> property settlements and to prevent the deduction of
> large, one-time lump-sum property settlements.
>
>     *    *    *    *    *    *    *
>
>     In order to prevent the deduction of amounts which
> are in effect transfers of property unrelated to the
> support needs of the recipient, the bill provides that
> a payment qualifies as alimony only if the payor * * *
> has no liability to make any such payment for any
> period following the death of the payee spouse. * * *

DRA 1984 amended section 71 to its present form, except that

under section 71(b)(1)(D), as amended by DRA 1984, there was also

a parenthetical requirement that in order for payments to

constitute alimony, the divorce or separation instrument state

that there is no liability on the payor spouse to make the

payments after the death of the payee spouse.[3] However, under

---

[3] As amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795, sec. 71(b)(1)(D) provided as follows:

> (D) there is no liability to make any such payment
> for any period after the death of the payee spouse and
> there is no liability to make any payment (in cash or
> property) as a substitute for such payments after the
> death of the payee spouse (and the divorce or

(continued...)

the statutory law of most States, alimony terminates at the death of the payee spouse unless the separation agreement or the divorce decree provides to the contrary. Therefore, in 1986, Congress struck the parenthetical under section 71(b)(1)(D) that provided for alimony treatment only if the divorce or separation instrument stated that there is no liability on behalf of the payor spouse to make the payments after the death of the payee spouse. See sec. 1843(b) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2853. But even after the 1986 amendment, if an obligation to make payments survives the death of the payee spouse under either the terms of the divorce decree or State law, then such payments will not be considered alimony. Thus, the 1986 amendment injected State law into the section 71(b) inquiry because, in order to distinguish alimony from property settlement, it may sometimes become necessary to consider State law to decide whether an obligation to make support payments survives the death of the payee spouse.

The issue before us is whether the payments petitioner received pursuant to the provisional order were for her support, thus constituting alimony, or in the nature of a property settlement and therefore excludable from her gross income.

---

[3](...continued)
separation instrument states that there is no such liability).

Specifically, we must decide whether under the terms of the provisional order, Mr. Heckaman would have been liable for payment of the amounts in issue in the event of petitioner's death. Because the Divorce Court's provisional order fails to address termination of payments in the event of petitioner's death, we must refer to Indiana State law. See <u>Morgan v. Commissioner</u>, 309 U.S. 78, 80 (1940); <u>Sampson v. Commissioner</u>, 81 T.C. 614, 618 (1983), affd. per curiam without published opinion 829 F.2d 39 (6th Cir. 1987).

We begin with the operative Indiana statute, Ind. Code sec. 31-1-11.5 to 7 (1995), pursuant to which the Divorce Court issued the provisional order. As pertinent here, Ind. Code sec. 31-1-11.5 to 7(a) (1995), provides that in any pending divorce proceeding, either party may make a motion for, inter alia, temporary maintenance. In turn, Ind. Code sec. 31-1-11.5 to 7(d) (1995), provides that the "court may issue an order for temporary maintenance or support in such amounts and on such terms as may seem just and proper". Finally, Ind. Code sec. 31-1-11.5 to 7(f) (1995) provides as follows:

> The issuance of a provisional order shall be without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding. Its terms may be revoked or modified prior to final decree on a showing of the facts appropriate to revocation or modification, and <u>it shall terminate</u> when the final decree is entered subject to right of appeal or <u>when the petition for dissolution or legal separation is dismissed</u>. [Emphasis added.]

Indiana statutory law does not specifically speak as to whether temporary maintenance shall terminate upon the death of the payee spouse. However, in an Indiana divorce proceeding, any cause of action terminates with the death of either spouse, see Hilton v. Shafford, 459 N.E.2d 744, 744-745 (Ind. Ct. App. 1984); Stoup v. Stoup, 35 N.E.2d 112 (Ind. Ct. App. 1941), as does a provisional order issued in such a proceeding. See Johnson v. Johnson, 653 N.E.2d 512, 516 (Ind. Ct. App. 1995); Fitzgerald v. Travelers Ins. Co., 567 N.E.2d 159, 161-162 (Ind. Ct. App. 1991) which holds:

> Unlike a final dissolution where all of the rights and interest of the parties have been fully adjudicated prior to the issuance of the decree, a provisional order is only designed to maintain the status quo of the parties and is not intended to be an ultimate determination of property rights. Pursuant to statute, the provisional order terminates when the petition for dissolution of marriage is dismissed. When a party dies prior to a grant of dissolution, the cause of action also dies. Divorce proceedings terminate entirely with the death of one of the parties. We hold that when [the payor spouse] died, the cause of action for dissolution of marriage died, as did the provisional order. [Citations omitted.]

Petitioner contends that Indiana law is ambiguous as to whether payments provided for pursuant to a provisional order survive the payee's death. In this regard she refers us to State Ex Rel Paxton v. Porter Superior Court, 467 N.E.2d 1205 (Ind. 1984), wherein the Indiana Supreme Court held that there are certain exceptions to the general rule that divorce proceedings

terminate in their entirety upon the death of one of the parties. Petitioner compares State Ex Rel Paxton v. Porter Superior Court, supra, to Fitzgerald v. Travelers Ins. Co., supra, and concludes that because Fitzgerald does not contemplate an exception to the general rule of termination upon death, the two cases are in conflict.  We disagree.

As respondent correctly points out, both of the foregoing cases have as their foundation the general rule that a divorce proceeding terminates when a party to such proceeding dies, but State Ex Rel Paxton v. Porter Superior Court, supra, simply creates a narrow exception to such rule.  State Ex Rel Paxton v. Porter Superior Court, supra, drew a distinction between the underlying divorce proceeding and the award of fees; the case held that the award of attorneys fees is not related to the merits of the action and does not, "strictly speaking", form a part of the judgment or decree in the cause.  The court then concluded that a taxpayer could be obligated for his or her spouse's attorney's fees even after the death of the spouse.

A recent Indiana case, Johnson v. Johnson, supra, reiterated the general rule that all causes of action in a divorce proceeding in Indiana terminate on the death of one of the parties.  Specifically, Johnson v. Johnson, supra, considered the Indiana Supreme Court's decision in Ex Rel Paxton v. Porter

Superior Court, supra, and concluded that under Indiana law only three narrow exceptions exist to the general rule that all divorce proceedings terminate on the death of one of the parties. None of those exceptions are present in petitioner's case. It follows, therefore, that the provisional order here in issue would have ceased to have any effect in the event of petitioner's death and that Mr. Heckaman's obligation to make any payments pursuant to it would have necessarily terminated.

Further, what is most pertinent to our inquiry is that under Indiana law a provisional order is simply for the purpose of maintenance and is distinct from a property settlement. Numerous Indiana cases have held that "maintenance" is for the purpose of supporting the receiving spouse. See Thatcher v. Thatcher, 496 N.E.2d 411 (Ind. Ct. App. 1986); Hicks v. Fielman, 421 N.E.2d 716, 721 (Ind. Ct. App. 1981); Wendorf v. Wendorf, 366 N.E.2d 703, 705 (Ind. Ct. App. 1977). "It follows that maintenance, the only other mechanism for transferring money, has no purpose other than the support of the receiving spouse". Hicks v. Fielman, supra at 721.

> Fitzgerald v. Travelers Ins. Co., supra at 162, states:
>
> Unlike a final decree which is entered after either a full hearing on all of the issues or after negotiation and agreement by the parties, a provisional order is only designed to maintain the status quo of the parties. I.C. 31-1-11.5-7(f). Thus a final decree divides the parties' property, whereas a provisional order does not.

And, in <u>Johnson v. Johnson</u>, <u>supra</u> at 516, the Indiana Court of Appeals stated as follows:

> We believe that the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest.  The property settlement is part and parcel of a final decree of dissolution.  Once the marriage is ended by the death of one of the parties before the judgment is rendered, no final decree can be attained.  Without a final decree, there can be no property settlement.
> * * * [Citation omitted.]

Therefore, it follows that any obligation for support of the payee spouse ceases with the death of such spouse.  Thus, we think that an Indiana court would hold that Mr. Heckaman's obligation to make the payments here in issue would have ceased in the event of petitioner's death because petitioner would not have required any maintenance after her death (or required tuition or life insurance premium reimbursement with respect to any period after her death).  The payments therefore are taxable to petitioner pursuant to section 71.

To reflect our disposition of the disputed issue, as well as respondent's concession,

<u>Decision will be entered</u>

<u>under Rule 155.</u>