FILED

Aug 03 2017, 5:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

George R. Livarchik
Livarchik & Farahmand
Chesterton, Indiana

ATTORNEY FOR APPELLEE
INTERVENOR

Sophia J. Arshad
Arshad, Pangere and Warring, LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Judith M. Edwards (n/k/a
Judith Klemos),

*Appellant-Defendant,*

v.

Allen O. Edwards, Deceased,

*Appellee-Plaintiff,*

and

D. Juatrice Edwards, as Personal
Representative of the Estate of Allen O.
Edwards,

*Appellee-Intervenor.*

August 3, 2017

Court of Appeals Case No.
64A03-1608-DR-1954

Appeal from Porter Superior Court.
The Honorable Katherine R. Forbes,
Magistrate.
The Honorable William E. Alexa,
Judge.
Trial Court Cause No.
64D02-1101-DR-887

**Sharpnack, Senior Judge**

# Statement of the Case

Judith Edwards Klemos appeals from the dissolution court's order granting D. Juatrice Edwards' "Motion to Vacate Hearing and Orders Restraining Assets." The court concluded that after the death of Allen O. Edwards, it no longer had jurisdiction over the disbursement of Allen's pension and retirement benefits, which it had previously ordered, and dismissed the temporary restraining order protecting assets, which it had entered. We reverse and remand.

# Issue

The dispositive issue presented in this appeal is whether the dissolution court, which had expressly retained jurisdiction, had jurisdiction over the disbursement of pension and retirement benefits after the death of one of the parties to the dissolution, and consequently erred by dismissing the temporary restraining order protecting those assets.

# Facts and Procedural History

Judith was married to Allen for more than twenty years prior to the entry of their Agreed Dissolution Decree, which was approved by the court on January 4, 2012. Judith appeared pro se during the proceedings, while Allen was represented by counsel. At issue here is enforcement of the award to Judith of her interest in Allen's pension and retirement benefits with John Hancock, PERF, and Valic for the coverture period, and for any appreciation in the value of her share of the accounts as of the effective date of the qualified domestic relations order ("QDRO").

[4] Paragraph 9(H) is the provision of the Agreed Dissolution Decree resolving the division of the pension and retirement benefits.

> [Judith] shall be sole owner of and retain her full interest in her pension with In-Pact.
>
> The parties were married on April 29, 1989 and they separated on October 5, 2009. The parties lived together as husband and wife for 20 years and 5 months. [Judith] is entitled to one-half interest in [Edward's] pension with John Hancock, PERF, and Valic for the coverture period of 20 years and five (5) months.

Appellant's App. Vol. II, p. 14.

[5] The Agreed Dissolution Decree, which was prepared by Allen's attorney, did not contain language assigning the responsibility of preparing the QDROs or other documents necessary to divide the pension and retirement benefits. Nevertheless, Allen's attorney attempted to prepare a QDRO for Allen's Valic account, but that QDRO was rejected. *Id*. at 24.

[6] Nearly four years elapsed after the entry of the Agreed Dissolution Decree and Judith had yet to receive her share of the pension and retirement funds. On May 12, 2016, Judith, then represented by counsel, filed a "Verified Emergency Motion for Relief from Judgment Per TR 60(A) and (B)(8) (Due to Ex-Husband's Terminal Illness)". *Id*. at 18-22. In that filing, Judith stated that she "relied upon Allen's attorney to complete the approval of the award to [her] of her one-half coverture interest in Allen's PERF, John Hancock and Valic accounts and followed up with Allen and/or his attorney from time to time to determine the status of same." *Id.* at 19. After receiving her copy of the letter

from Valic indicating that the submitted QDRO was inadequate, Judith continued to contact Allen and his attorney to determine the status of the distribution.

[7] Upon learning that Allen was terminally ill with cancer and had but a short time to live, Judith filed an emergency motion to obtain the assets awarded to her in the Agreed Dissolution Decree. In support of her motion, she claimed that she was misled to believe that PERF would divide Allen's pension and retirement benefits by a QDRO when it would not,[1] and she later learned that Valic did not retain records sufficient to approve a QDRO for the account. She sought emergency relief from the dissolution court to enable her to receive her portion of the benefits from Allen's PERF, Valic, and John Hancock accounts.

[8] Responses to nonparty requests for production revealed that on April 26, 2016, well after the dissolution decree had been entered, Allen had signed a new beneficiary designation removing Judith and their daughter as the primary beneficiaries of Allen's PERF annuity savings account, replacing them with a new beneficiary, Juatrice Davis, his fiancée. As for the John Hancock retirement account, by October 5, 2009, his assets were valued at $25,844.65. On March 31, 2016, the account had a value of $73,896.24. The QDRO prepared by Allen's counsel provided for the withdrawal of $22,894.98 for

---

[1] Certain restrictions applicable to a dissolution court's division of PERF benefits have been recognized and addressed in *Board of Trustees of Ind. Public Employees Retirement Fund v. Grannan*, 578 N.E.2d 371 (Ind. Ct. App. 1991), *trans. denied*.

Judith's share.  No further action was taken at that point with respect to the Valic account.

[9]     On May 23, 2016, Judith filed an amended emergency motion, adding to her allegations a petition for rule to show cause.  The next day Judith filed a verified petition under Indiana Trial Rule 65 for an immediate restraining order without notice and an application for a preliminary injunction.  That day, with the agreement of the parties, the trial court issued the restraining order prohibiting Allen from disposing of any of his pension benefits, including the pension and retirement benefits subject to the order, and a hearing was set for July 1, 2016.  The pertinent parts of the trial court's order follow:

> (2)    The Court also orders that Attorney Livarchik [Judith's attorney] shall (as soon as reasonably possible) complete QDROs or similar tax-free transfer instruments providing for Judith to receive her share of Allen Edwards' Valic and John Hancock accounts as required by the January 4, 2012 Agreed Dissolution Decree.  The Court specifically finds that Attorney Livarchik's fee for preparation of the QDROs shall be paid out of Allen's share of his retirement funds, or Allen's other property.
>
> (3)    The Court also finds that the PERF needs to be divided as required by the January 4, 2012 Agreed Dissolution Decree.  The Court specifically reserves jurisdiction over this matter including but not limited to the division of Allen's PERF and other retirement accounts.

*Id*. at 46-47.

[10]    Allen passed away on May 25, 2016.

[11] On June 30, 2016, Juatrice, by counsel, filed a "Motion for Leave to Intervene and Enter Limited Appearance to Offer Suggestion of Death and to Vacate Hearing and Orders Restraining Assets." *Id*. at 51-56. Juatrice sought to intervene in the proceedings because she was Allen's surviving spouse and claimed an interest in some of the property encumbered by the trial court's restraining order. She further argued that any claim Judith had to property that had not been distributed during the four years since entry of the dissolution decree was now a claim against Allen's estate, as the dissolution court no longer had jurisdiction of the matter after Allen's death.

[12] The trial court held a hearing to determine if it retained jurisdiction over the dissolution matters. On July 26, 2016, the trial court concluded that it no longer had jurisdiction over the distribution of Allen's retirement and pension.

[13] On August 12, 2016 in Lake Circuit Court, Juatrice filed a "Petition for Probate of Will and Issuance of Letters." Appellant's Supp. App. Vol. II, at pp. 2-3. On October 24, 2016, Judith filed a "Claim/Complaint" in the probate action in Lake County. Appellee's App. Vol. II at pp. 5-18. Juatrice filed a motion to dismiss Judith's complaint and filed a motion to strike in the probate action. Appellant's Supp. App. Vol. II, pp. 12-18.

[14] Judith now appeals from the dissolution court's order concluding that it no longer had jurisdiction over the enforcement and distribution of Allen's pension and retirement benefits and that the temporary restraining order should be dismissed.

# Discussion and Decision

[15] Both parties agree that our standard of review is de novo. The dissolution court treated Juatrice's motion as a motion to dismiss for lack of subject matter jurisdiction. The facts pertinent to the issue of the trial court's jurisdiction are generally undisputed by the parties. When that is the case, we review the trial court's ruling de novo. *Beard v. Beard*, 758 N.E.2d 1019, 1021 (Ind. Ct. App. 2001), *trans. denied*.

[16] Subject matter jurisdiction is defined as the power to hear and determine cases of the general class to which any particular proceeding belongs. *In re Custody of M.B.*, 51 N.E.3d 230, 234 (Ind. 2016). With respect to dissolution proceedings, we begin by stating the general premise that dissolution proceedings terminate entirely with the death of one of the parties to the dissolution. *State ex rel. Smith v. Delaware Cty. Superior Court*, 442 N.E.2d 978, 980 (Ind. 1982). However, certain exceptions have since been recognized.

[17] In *Dodd v. Estate of Yanan*, 625 N.E.2d 456 (Ind. 1993), the Husband died three years after his marriage to Wife was dissolved by a decree which also approved a property settlement agreement between them. Wife brought an action against Husband's estate seeking monetary and punitive damages, claiming that he had withheld information regarding his net worth and thus defrauded her in the settlement agreement approved by the court.

[18] The probate court dismissed the Wife's claim on the ground that it was an impermissible collateral attack on the dissolution decree. Our Supreme Court

affirmed the dismissal, holding that a decree of dissolution is a final judgment not subject to collateral attack in a different court and that Wife's sole remedy was to apply for modification of the decree per then Indiana Code section 31-1-11.5-17(b) [now Ind. Code § 31-15-7-9.1(1998)], which provided for modification of property disposition orders of dissolution courts in cases of fraud.

[19] In *State ex rel. Paxton v. Porter Superior Court*, 467 N.E.2d 1205, 1207 (Ind. 1984), Wife died prior to the entry of a decree of dissolution. Her attorney was allowed to claim attorney fees from Husband for services to Wife in the action prior to her death. In *Lizak v. Schultz*, 496 N.E.2d 40, 43 (Ind. 1986), the dissolution court was permitted to reduce child support arrearages to a judgment after the death of the spouse entitled to the child support payments. Her subsequent spouse, as administrator of her estate, was entitled to pursue enforcement of the award entered prior to her death in the dissolution court. In *Beard*, the dissolution court bifurcated proceedings, entering an order dissolving the marriage, and reserving the property distribution issues for separate decision. Husband died prior to any decision as to the property. Wife moved to dismiss the dissolution proceedings on the ground the death had deprived the dissolution court of jurisdiction. The court denied the motion and proceeded to a final hearing and a decree of dissolution, including an award of more than fifty percent of the marital property to Husband's estate. A panel of this Court held that in light of the statute providing for bifurcation of dissolution proceedings, Indiana Code § 31-15-2-14 (1997), the death of a spouse after

dissolution of the marriage and prior to the disposition of property did not deprive the dissolution court of jurisdiction to conclude the proceedings and decree both the dissolution and property division. Transfer was denied by our Supreme Court.

[20] Judith contends that the dissolution court erred by refusing to retain jurisdiction, relying in large part on *Lizak*. Juatrice claims that none of the exceptions to the general rule are applicable and relies on *Johnson v. Johnson*, 653 N.E.2d 512 (Ind. Ct. App. 1995). In particular, she notes a portion of the opinion stating, "We believe that the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest." *Id.* at 516. Juatrice argues that the present case is like that in *Johnson* because it is a property matter between a party and a successor in interest.

[21] *Johnson* is distinguishable, however. In *Johnson*, "the trial court had not made a final determination and pronouncement until after Husband had died." *Id*. Therefore, the trial court erred by entering the decree of dissolution nunc pro tunc. *Id.*

[22] In the present case, the trial court had made a final determination upon accepting the parties' Agreed Dissolution Decree setting forth the division of pension and retirement assets among other things. Judith sought to enforce the award in the dissolution court. A dissolution court may exercise continuing

jurisdiction to reexamine a property settlement where the nature of the examination is to seek clarification of a prior order." *Fackler v. Powell*, 839 N.E.2d 165, 167 (Ind. 2005). "This jurisdictional grant to a dissolution court is warranted as an extension of 'the necessary and usual powers essential to effectuate th[e marital] dissolution, [which] include[s] the power to interpret the court's own decree.'" *Id.* (quoting *Behme v. Behme*, 519 N.E.2d 578, 582 (Ind. Ct. App. 1988)). The trial court's order on the May 24, 2016, hearing clarified the Agreed Dissolution Decree by assigning the task of preparing the QDROs or other necessary documents to Judith's attorney as soon as possible and provided for the issuance of a restraining order to protect those assets given the state of Allen's health. Allen died the next day, before counsel could prepare the necessary documents.

[23] Juatrice intervened in the action and claimed that although the dissolution court had explicitly retained jurisdiction for purposes of seeing the disbursement of the pension and retirement funds through to its completion, the dissolution court no longer had jurisdiction over the matter due to Allen's death. This position is contrary to the holdings of the cases cited above and the trial court erred by holding that it lacked continuing jurisdiction to complete the implementation of the division of property as ordered in the final decree.

[24] The dissolution court's continuing jurisdiction would also include the ability to reopen the decree to address any allegations of fraud which may have underpinned the final decree or fraud in the attempts to carry out the preparation of the QDROs. Additionally, the dissolution court would have the

authority to clarify the issue of any appreciation or depreciation of Judith's share of the pension and retirement benefits for the coverture period.

[25] Consequently, the dissolution court further erred by dismissing the restraining order protecting the retirement and pension assets until they could be properly divided.

## Conclusion

[26] In light of the foregoing, we reverse the dissolution court's order and remand for proceedings consistent with this opinion.

[27] Reversed and remanded.

Crone, J., and Bradford, J., concur.