Dorothy Mae BEARD, Appellant–
Respondent,

v.

Edward R. BEARD, Appellee–
Petitioner.

No. 15A01–0104–CV–128.

Court of Appeals of Indiana.

Nov. 30, 2001.

---

Steven C. Shockley, Maggie L. Smith, Sommer & Banard, P.C., Indianapolis, IN, Attorneys for Appellant.

George A. Leininger, Embank & Kramer, Lawrenceburg, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Dorothy Mae Beard (hereinafter "Wife") appeals the trial court's order dissolving her marriage to Edward R. Beard (hereinafter "Husband") and dividing the marital property. We affirm the trial court's order.

### Issues

Wife presents three issues for our review, which we consolidate and restate as follows:

1. Whether the trial court lost jurisdiction over the dissolution action when Husband died prior to the final hearing on property division; and

2. Whether the trial court erred in its division of property between Wife and Husband's estate.

### Facts and Procedural History

Husband and Wife were married in 1977; the union was the second marriage for each of them. Husband was diagnosed with cancer in approximately 1996. Husband filed his petition for dissolution of marriage on March 30, 2000; the parties then requested the trial court bifurcate the divorce proceedings. On June 2, 2000, the trial court entered an order dissolving the parties' marriage and reserving for later decision the issue of property division. Hearings regarding division of the marital property were held on August 15, 2000, and August 25, 2000. The third and final hearing was scheduled for October 17, 2000; however, Husband passed away on September 4, 2000. Wife filed a motion to dismiss the dissolution proceedings for lack of jurisdiction after Husband's death, but the trial court denied the motion and held the final hearing. The trial court entered a final decree of dissolution on February 12, 2001; that decree awarded Husband's estate a share of the property that was greater than fifty percent of the total property. Wife then brought this appeal.

### Discussion and Decision

#### I. Subject Matter Jurisdiction

##### A. Standard of Review

■ Our standard for reviewing the trial court's ruling on a motion to dismiss for lack of subject matter jurisdiction is dependent upon whether the trial court resolved disputed facts and if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. Where as here, the facts before the trial court are undisputed, we review the trial court's ruling de novo. *Fratus v. Marion Community Schools Bd. of Trustees,* 749 N.E.2d 40, 43 (Ind.2001).

##### B. Jurisdiction After Death of a Party

Wife argues the trial court no longer had subject matter jurisdiction to continue with the dissolution action or to divide the marital property after Husband's death. Wife also argues the "Summary Decree of Dissolution" entered on June 2, 2000, was a provisional order that terminated upon Husband's death. In contrast, Husband's estate argues for an exception to the general rule that a dissolution action ends upon the death of a party. Husband's estate also argues the interests of justice and fairness were best served by the trial court's completion of the dissolution, as the trial court was in the best position to divide the parties' property after having heard all the evidence in this case.

As Wife primarily cites *Johnson v. Johnson,* 653 N.E.2d 512 (Ind.Ct.App. 1995), in support of her argument, we be-

gin our analysis by considering that case. In *Johnson,* this court noted the common law rule that in a divorce action, the trial court loses jurisdiction over the case upon the death of one of the principals. Wife specifically notes the following language from *Johnson,* 653 N.E.2d at 516:

> We believe the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest. The property settlement is part and parcel of a final decree of dissolution. Once the marriage is ended by the death of one of the parties before the judgment is rendered, no final decree can be attained.

The *Johnson* court also noted three exceptions to the general rule. In *State ex rel. Smith v. Delaware County Superior Court,* 442 N.E.2d 978, 980 (Ind.1982), the supreme court allowed a surviving spouse to seek modification of a property settlement after the decree was entered and after her husband died based on the deceased husband's fraudulent underreporting of his assets to the court. *Johnson,* 653 N.E.2d at 514. In *State ex rel. Paxton v. Porter Superior Court,* 467 N.E.2d 1205, 1207 (Ind.1984), although the supreme court made it clear that upon the death of one of the parties all the proceedings terminated, it made an exception to the general rule in order to allow the deceased spouse's attorney to recoup from the sur-

viving spouse fees and expenses incurred in preparing the case. *Johnson,* 653 N.E.2d at 514. Finally, in *Lizak v. Schultz,* 496 N.E.2d 40, 43 (Ind.1986), the supreme court made an exception to the general rule in order to permit the deceased spouse's estate to have child support arrearages reduced to judgment by the dissolution court following the entry of the decree of dissolution. *Johnson,* 653 N.E.2d at 514.

The *Johnson* court found that none of the three exceptions applied and thus remanded the case to the trial court with instructions to dismiss the action for lack of jurisdiction. Husband's death after the bifurcation creates a different set of facts than existed in *Johnson,* and therefore our review will involve different considerations. However, we learn from *Johnson* that all three previous exceptions to the common law rule were made when the equities weighed in favor of allowing a party to recover who would otherwise be injured because the court lost jurisdiction over the dissolution action. Although none of these three exceptions apply in the present case, our review will include consideration of equitable concerns.[1]

■ Our review will also include consideration of the intent of the legislature in creating the bifurcation statute.[2] Indiana Code section 31–15–2–14 provides for bifurcation of a dissolution proceeding as follows:

1. "Prior to the adoption of the Indiana Constitution in 1851, divorce proceedings were regarded as belonging to the equity courts, who had authority to determine child custody decisions as well as settle all property rights between parties. As a result, while divorces were considered 'civil actions,' they were not included in the term 'civil cases' as found in the Bill of Rights of our Constitution. This practice has changed over the last several decades, however, and divorce law is now

primarily statutory. Despite this change, divorce and child custody statutes still contain many equitable attributes." *Schrock v. Gonser,* 658 N.E.2d 615, 617 (Ind.Ct.App.1995) (Baker, J., dissenting), *trans. denied.*

2. "The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature." *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind.1998).

(a) The court may bifurcate the issues in an action for dissolution of marriage filed under section 2 of this chapter (or IC 31–1–11.5–3(a) before its repeal) to provide for a summary disposition of uncontested issues and a final hearing of contested issues. The court may enter a summary disposition order under this section upon the filing with the court of verified pleadings, signed by both parties, containing:

(1) a written waiver of a final hearing in the matter of:

(A) uncontested issues specified in the waiver; or

(B) contested issues specified in the waiver upon which the parties have reached an agreement;

(2) a written agreement made in accordance with section 17 of this chapter pertaining to contested issues settled by the parties; and

(3) a statement:

(A) specifying contested issues remaining between the parties; and

(B) requesting the court to order a final hearing as to contested issues to be held under this chapter.

(b) The court shall include in a summary disposition order entered under this section a date for a final hearing of contested issues.[3]

Bifurcation is a process created by statute that allows a trial judge to complete a dissolution in two separate phases. While a dissolution action is not completed until the second phase is finished and a final decree is entered, the orders entered after the first phase must be valid, binding orders upon which the parties are able to rely in conducting their affairs. For example, in a bifurcated proceeding, a party may remarry after the previous marriage is dissolved but before the final decree of dissolution is entered.

However, whether the orders entered after the first phase continue to be valid and binding after the death of a party but before the final decree is a question of first impression for us. Wife argues the trial court lost jurisdiction and therefore the first phase orders became void after Husband's death because of the general rule that the death of a party brings an immediate end to a dissolution action. Should we accept the proposition Wife advances, we would be creating a potentially unworkable rule with highly inequitable results for divorcing parties attempting to use the bifurcation statute. Using our previous example, let us imagine one party remarries and then dies after bifurcation but before the dissolution proceedings are finalized. If the action were dismissed and the previous order void, the deceased party would effectively have two "spouses" who would be competing for their share of the estate. In more general terms, were the first phase orders voidable upon the death of a party during the second phase, parties would not be able to act in reliance upon the first set of orders in a bifurcated dissolution until those orders were finalized. This defeats the very purpose of having a bifurcated process, and thus it cannot have been the intent of the legislature in creating that process.

■ In addition, this proposed rule could lead to results in terms of property division that the parties did not intend—

---

**3.** Wife notes the title of the trial court's order entered on June 2, 2000, dissolving the marriage, namely the "Summary Decree of Dissolution," is inaccurate. Under Indiana Code section 31–15–2–13, a "summary decree of dissolution" may only be entered when all issues have been resolved and no final hearing is required. It appears the trial court simply erred in titling its order; the order should have been a "summary disposition order" under Indiana Code section 31–15–2–14.

especially given their expressed consent to divorce and the court's finding the marriage has ended. If the action is dismissed and the first phase orders voided, the surviving ex-spouse (who then becomes the spouse once more) could be placed in a position to take the entire undivided marital estate or most of that estate, just as could an undivorced spouse. In addition to not honoring the court's findings regarding dissolution of the marriage, such a rule could potentially produce inequitable results for the decedent's devisees or heirs. We believe the better rule to be one which gives full credit to the trial court's findings and orders and which allows the trial court to continue the process it began. Thus, we hold that a death during the second portion of a bifurcated dissolution action does not void an order ending the marriage entered during the first phase or deprive the trial court of jurisdiction to complete the action.[4]

We must consider two additional arguments made by Wife. First, Wife cites this court's holding in *L.D.H. v. K.A.H.*, 665 N.E.2d 43, 50 (Ind.Ct.App.1996), *abrogated on other grounds.* In that case, the parties agreed upon a final decree of dissolution and a property settlement, and using the bifurcated process, they reserved the issues of custody and support for later decision. The trial court thus entered an order dissolving the parties marriage. Later, the mother moved to set aside that order, and the trial court granted the motion, reasoning that the bifurcation statute does not allow for a final dissolution until a final hearing of all contested issues. The father appealed the trial court's determination that the marriage was not, in fact, dissolved. On review, this court determined that the father had not demonstrated how he was prejudiced by the trial court's reconsideration of the order, and therefore, under our deferential standard of review, this court could not find the trial court abused its discretion in doing so. *Id.* at 50–51. Wife cites this case for the proposition that her marriage to Husband was not actually dissolved by the first order in the bifurcated process, and therefore, that order should be dismissed along with the entire dissolution action. However, we do not find this holding to be contrary to our opinion today, as in *L.D.H.*, this court did not explicitly approve the trial court's holding regarding the finality of a dissolution order entered during the first phase but rather merely found the trial court did not abuse its discretion in its ruling.

Finally, Wife urges that we find the order dissolving the parties' marriage was a provisional order, and as such was void upon Husband's death because the entire action was dismissed for lack of jurisdiction. Wife cites *Fitzgerald v. Travelers Ins. Co.*, 567 N.E.2d 159 (Ind.Ct.App.1991), *trans. denied,* in support of her argument regarding provisional orders. In that case we noted that:

> Unlike a final dissolution, where all of the rights and interests of the parties have been fully adjudicated prior to the issuance of the decree, a provisional order is only designed to maintain the status quo of the parties and is not intended to be an ultimate determination of property rights. Pursuant to statute, the provisional order terminates when

---

**4.** We have not considered here the possibility that a death during the second part of the dissolution dismisses the action but does not void the first set of orders, as neither party argues for that rule. We merely note that such a finding would lead to an impossible result, as when an action is dismissed, the petition on which it was based is also necessarily dismissed. If the petition is dismissed, then orders entered based upon that petition must also be dismissed, or they are baseless orders.

the petition for dissolution of marriage is dismissed.

*Id.* at 161 (citations omitted). *See also* Ind.Code § 31–15–4–14 (termination of provisional orders at the time final decree is entered). We cannot agree with Wife's argument that the order entered on June 2, 2000, was a provisional order. Were the orders merely provisional as Wife argues, parties would not be entitled to act in reliance on the first set of orders in a bifurcated proceeding until entry of the final decree. As we explained previously, were parties unable to rely on the first set of orders in a bifurcated dissolution, there would be no purpose for having a bifurcated process.

Because of the unique two-part proceeding created by the statute, a death during the second portion of the proceeding does not void an order dissolving the parties' marriage entered in the first part of the proceeding. Nor does such a death deprive the trial court of jurisdiction to complete the dissolution action.

## II. Division of Property

### A. Standard of Review

■ We review a division of property in a dissolution of marriage appeal for an abuse of the trial court's discretion. We must determine whether the result reached is clearly against the logic and effect of the facts and circumstances before the trial court, including any reasonable inferences drawn therefrom which are most favorable to the appellee. *Johnson,* 653 N.E.2d at 514.

### B. Transfer Prior to Death

Wife makes two arguments regarding the trial court's division of property. First, she argues the trial court erred in awarding two parcels of real estate to Husband's estate after Husband deeded those two parcels to Wife during the marriage.

Next, she argues the trial court erred in awarding Husband's estate a larger share of the marital property than she received.

■ With regard to the real estate, Wife takes the position that Husband transferred those two parcels to her by a valid inter vivos transfer prior to his filing of the petition for dissolution. Therefore, she argues, the parcels were her sole and separate property and should have been awarded to her in the final property division, but the trial court instead "voided" the transfer when it awarded the two properties to Husband's estate. We cannot agree with Wife's argument. "It is well settled in Indiana that all marital property goes into the marital pot for division." *Akers v. Akers,* 729 N.E.2d 1029, 1032 (Ind.Ct.App.2000). *See* Ind.Code §§ 31–15–7–4(a) (providing that the trial court shall divide the marital property at dissolution, regardless of time or method of acquisition) and 31–9–2–98 (defining "property" for purposes of dissolution as "all the assets of either party or both parties"). The trial court did not "void" any transfer; rather, it considered all items of marital property, regardless of title, together in the marital pot pursuant to Indiana Code sections 31–15–7–4(a) and 31–9–2–98.

Next, we consider the trial court's division of property. Wife argues the trial court abused its discretion in awarding an unequal division of the marital property. She claims that:

> The trial court found that a deviation from the statutory presumption of an equal division of the marital property was justified because the value of Husband's separate property was greater than the value of Wife's separate property. However, the only reason the value of Husband's separate property was greater than the value of Wife's separate property was because the trial court er-

roneously voided the transfer of the deeded transfer [sic] and placed the property back in Husband's separate property.

Brief of Appellant at 15–16 (citation omitted). This is simply a mischaracterization of the trial court's action. The trial court properly considered the assets each party owned prior to the marriage, not each party's "separate property," as Wife describes it. As we noted previously, the two parcels of land went into the marital pot, and thus the trial court did not "void" the transfers of title as Wife suggests.

Indiana Code section 31–15–7–5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:

> > (A) a final division of property; and
> >
> > (B) a final determination of the property rights of the parties.

The trial court concluded that "awarding 63% of the marital estate to [Husband] and 37% of the Marital assets to [Wife] is justified because most of the marital assets were owned by [Husband] prior to the marriage." Appellant's Appendix at 18. The trial court found that Husband owned property worth approximately $440,000 prior to the marriage and that Wife owned property worth approximately $95,000 prior to the marriage. Wife does not dispute these findings. As Indiana Code section 31–15–7–5(2)(A) allows the trial court to consider the extent to which the property was acquired by each spouse before the marriage, the trial court was justified in so doing. The resulting division of property is not clearly against the logic and effect of the facts and circumstances before the court. Therefore, the trial court did not abuse its discretion in awarding 63% of the total assets to Husband's estate and 37% of the assets to Wife in the final dissolution order.

### Conclusion

The trial court did not err in dividing the marital assets and entering a final dissolution order after Husband's death. Moreover, the trial court did not abuse its discretion in awarding an unequal division of property at dissolution.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.