## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2017, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Marvin Mitchell
Richard J. Dick
Mitchell Dick McNelis, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

R. Brock Jordan
Densborn Blachly LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of:

Milana Staletovich Riggs,

*Appellant-Petitioner,*

v.

Leon O. Riggs,[1]

*Appellee-Respondent.*

May 22, 2017

Court of Appeals Case No.
49A02-1605-DR-1057

Appeal from the
Marion Superior Court

The Honorable
Patrick J. Dietrick, Judge

Trial Court Cause No.
49D12-1506-DR-21278

---

[1] Leon O. Riggs died while the instant dissolution proceedings were pending, and Milana filed a motion asking the trial court to substitute Leon's daughter in Leon's place. That motion was dismissed as moot when the trial court found that the dissolution proceedings terminated upon Leon's death.

**Kirsch, Judge.**

[1] Milana Staletovich Riggs ("Milana") appeals the trial court's order dismissing her petition for dissolution of marriage following the death of Leon O. Riggs ("Leon"). On appeal, Milana raises the following consolidated and restated issue: whether the trial court lost jurisdiction over the dissolution action when Leon died prior to the entry of a decree of dissolution. Finding that the trial court lost jurisdiction, we affirm.

## Facts and Procedural History

[2] Leon and Milana were married in April 1968, and they lived together as husband and wife for one year. In April 1969, the couple separated and never again lived together. There were no children of the marriage. On June 26, 2015, Milana filed a petition for dissolution of marriage (the "Petition"), which initiated the instant action (the "dissolution action"). Leon suffered from symptoms of dementia as early as 2010, and by the time the dissolution action was filed in 2015, Leon required constant care and was not competent to participate in the dissolution action. *Appellee's App*. at 5. Accordingly, the trial court appointed Leon's daughter, Cynthia Hill ("Hill"), to be Leon's guardian ad litem (the "Guardian Ad Litem").[2] On November 6, 2015, Milana filed a Petition for Hearing on Preliminary Attorney's Fees and Expenses, Temporary

---

[2] Because Hill represented Leon's interests both before and after his death, for clarity, we use the term Guardian Ad Litem to refer to Hill when she acted on Leon's behalf in the dissolution action.

Restraining Order after Notice and Hearing, and for Court Appointed Valuation Experts and Appraisers.

[3] Leon died on December 4, 2015, leaving a Last Will and Testament, dated July 6, 2006. At the time of his death, no decree of dissolution had been entered. In fact, the Guardian Ad Litem had not filed a responsive pleading to the Petition or to any of Milana's other motions pertaining to the dissolution action. On January 20, 2016, a petition for probate of Leon's will was filed in the Marion County Probate Court under cause number 49D08-1601-EU-2099 ("probate matter"). *Pet'r's Ex*. 2. Sometime prior to his death, Leon had placed all his assets into the Leon Riggs Trust ("the Trust"). The Trust assets fell "outside the probate estate," and therefore, the value of Leon's estate was reported as zero. *Tr*. at 20.

[4] On March 8, 2016, Milana filed a motion to substitute Hill as a party in place of Leon in the dissolution action.[3] *Appellee's Br*. at 4. Approximately one week later, the Guardian Ad Litem, citing to the fact of Leon's death, filed a motion to dismiss the dissolution action for lack of jurisdiction and to "deny as moot all pending motions."[4] *Appellant's App*. at 31. After an April 20, 2016 hearing on

---

[3] Milana selected Hill because Hill was the Personal Representative of Leon's estate and the Trustee of the Trust.

[4] At the time the motion to dismiss was filed, the following motions, all of which had been filed by Milana, were pending in the dissolution action: (a) Verified Petition for Hearing on Preliminary Attorney's Fees and Expenses, Temporary Restraining Order after Notice and Hearing, and for Court Appointed Valuation Experts and Appraisers, dated November 9, 2015; (b) Motion for Court Conference, dated February 22, 2016; and (c) Motion to Substitute Party and Motion/or Hearing on Substitution of Parties, both dated March 9, 2016. *Appellant's App*. at 31-32.

the motion to dismiss and on the motion for substitution of party, the trial court, following this court's reasoning in *Johnson v. Johnson*, 653 N.E.2d 512, 514 (Ind. Ct. App. 1995), granted the Guardian Ad Litem's motion to dismiss, finding that the trial court "no longer ha[d] jurisdiction over issues related to the marital dissolution" due to Leon's death. *Appellant's App*. at 77. Having so ordered, the trial court denied as moot: (1) Milana's motion to substitute Hill as a party in place of Leon; and (2) all other pending motions.[5] Milana now appeals.

## Discussion and Decision

[5]  Milana contends that the trial court erred by granting the Guardian Ad Litem's motion to dismiss the dissolution action upon finding that the trial court was divested of jurisdiction by Leon's death, occurring as it did prior to the entry of a decree of dissolution. Milana argues that dismissal of the dissolution action will deprive her of a just and reasonable share of a significant marital estate because she will be left with only the remedy of electing to take against the will in Leon's probate estate that is valued at zero.

[6]  We review de novo a trial court's grant of a motion to dismiss for lack of jurisdiction. *Boyer v. Smith*, 42 N.E.3d 505, 508 (Ind. 2015). Whether jurisdiction exists, however, can depend upon factual determinations. *Id*.

---

[5] We commend the trial court on the clarity and thoroughness of its order, which greatly aided our appellate review.

(citing *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014)). When the trial court does make findings of jurisdictional facts, the standard for review is "for clear error." *Id*. at 509.

[7] The dispositive issue before this court is whether the trial court had continuing jurisdiction over the dissolution of Milana and Leon's marriage, or whether that court was divested of jurisdiction when Leon died on December 4, 2015. Stated differently, when Leon, a party to a marriage dissolution action, died prior to the trial court having granted a dissolution decree, did the cause of action also die. Milana recognizes that, pursuant to long-standing Indiana law, a dissolution proceeding terminates upon the death of a party and that none of the few common-law exceptions to this rule apply in this case. She argues, however, that, notwithstanding the general rule, this court has the authority to and, based on equitable considerations, should recognize an exception that allows the trial court to maintain its jurisdiction over the dissolution action.

[8] Indiana follows the general rule that "the trial court in a dissolution action loses jurisdiction over the case upon the death of one of the principals" ("the Termination Rule").[6] *Johnson*, 653 N.E.2d at 514; *see also State ex rel. Gregory v.*

---

[6] Milana contends that the dissolution court should have allowed her to continue the dissolution action because the application of the Termination Rule "is limited to custody matters." *Appellant's App*. at 15. She argues that in *State ex rel. Gregory v. Superior Court of Marion County*, 242 Ind. 42, 48, 176 N.E.2d 126, 129 (Ind. 1961), our court's holding limited the application of the Termination Rule to matters of control and custody of children. *Id*. at 16. Accordingly, she asserts that our appellate court in *Hendrickson v. Binkley*,161 Ind. App. 388, 391, 316 N.E.2d 376, 378 (1974), *abrogated on other grounds by In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002), *cert. denied,* improperly cited *Gregory* as support for the proposition that the Termination Rule has general applicability. *Appellant's App*. at 16. We disagree with Milana's assertion that the Termination Rule has limited application. First, even though the issue before the *Gregory* Court pertained to custody

*Superior Court of Marion Cty.*, 242 Ind. 42, 48, 176 N.E.2d 126, 129 (Ind. 1961); *Murdock v. Estate of Murdock*, 935 N.E.2d 270, 273 (Ind. Ct. App. 2010); *Beard v. Beard*, 758 N.E.2d 1019, 1022 (Ind. Ct. App. 2001), *trans. denied*.  However, our Supreme Court has established the following three narrow exceptions to the Termination Rule:

> In *State ex rel. Smith v. Delaware County Superior Court,* 442 N.E.2d 978, 980 (Ind. 1982), our Supreme Court allowed a surviving spouse to seek modification of a property settlement after the decree was entered and after her husband died based on the deceased husband's fraudulent underreporting of his assets to the court.  In *State ex rel. Paxton v. Porter Superior Court,* 467 N.E.2d 1205, 1207 (Ind. 1984), the Court clarified that the death of a party ended the dissolution proceedings, but allowed the deceased spouse's attorney to recoup from the surviving spouse fees and expenses incurred in preparing the divorce case.  Finally, in *Lizak v. Schultz,* 496 N.E.2d 40, 43 (Ind. 1986), the Court recognized an exception in order to permit the deceased spouse's estate to have child support arrearages reduced to a judgment by the dissolution court following the entry of the decree of dissolution.

*Murdock v. Estate of Murdock*, 935 N.E.2d 270, 273 (Ind. Ct. App. 2010).

matters, the *Gregory* court recognized the general applicability of the Termination Rule.  *See Gregory*, 242 Ind. at 48, 176 N.E.2d at 129 ("Under the better reasoned authority it would appear that the divorce proceedings terminated entirely and died with the death of the former wife of relator . . . .").  Second, while *Hendrickson* cited to *Gregory* to support the notion that the Termination Rule has general applicability, 161 Ind. App. at 391 316 N.E.2d at 378, *Gregory*, alone, was not the source of that rule.  Twenty years before *Gregory* was decided, our court in *Stoup v. Stoup*, 35 N.E.2d 112 (1941) recognized the same general rule.  *See Stoup*, 35 N.E.2d at 113 ("Causes of action for divorce die with the person . . . .").

[9] A fourth exception to the Termination Rule was carved out in *Beard*. There, husband filed a petition for dissolution, and the parties requested and were granted a bifurcated trial pursuant to Indiana Code section 31-15-2-14. 758 N.E.2d at 1021. In phase one of the trial, the dissolution court dissolved the marriage. *Id*. However, when husband died prior to the final hearing on property division hearing, the surviving spouse moved to dismiss the dissolution proceeding on the basis that the dissolution court no longer had jurisdiction. The trial court denied the motion and proceeded to divide the property and enter a final decree. Recognizing the unique situation presented when parties agree to bifurcate the issues in dissolution proceedings, the *Beard* court explained, "While a dissolution action is not completed until the second phase is finished and a final decree is entered, the orders entered after the first phase must be valid, binding orders upon which the parties are able to rely in conducting their affairs." *Beard*, 758 N.E.2d at 1023. Accordingly, the *Beard* court concluded that the Termination Rule did not apply, thereby affirming the trial court's determination that jurisdiction remained with the dissolution court. *Id*. at 1025.

[10] Milana cites to *Johnson* and *Beard*, two cases she contends are significant to the outcome of the instant case. In *Johnson* and *Beard*, the death of a party to a dissolution proceeding prompted the surviving spouse to file a motion to dismiss, claiming that the party's death divested the dissolution court of jurisdiction. *Beard*, 758 N.E.2d 1021; *Johnson*,653 N.E.2d at 513. Both courts determined that the Termination Rule applied and that the facts of the

respective cases did not fall within one of the three stated exceptions to that rule. *Beard*, 758 N.E.2d at 1022; *Johnson*, 653 N.E.2d at 514. While the facts of the cases were similar, the decisions were decidedly dissimilar—the *Johnson* court dismissed the dissolution proceedings, while the *Beard* court, analyzing the impact of the bifurcation statute, allowed jurisdiction to remain with the dissolution court.

[11]   Here, Milana contends that it was error for the trial court to dismiss the dissolution action pursuant to the precedent of *Johnson*. Specifically, Milana argues that, considering the harm she will suffer if the dissolution action is dismissed and she can only elect to take against the estate, the trial court should have followed the *Beard* court's equitable approach and allowed the dissolution action to continue. In her brief, Milana urges this court to follow the analysis in *Beard* because "[t]he bedrock principle of this Court's holding in *Beard* was that exceptions to the [Termination Rule] need not resemble the circumstances of a former exception but that equitable considerations of harm or injury govern." *Appellant's Br*. at 25.

[12]   In *Beard*, husband and wife had been married for nineteen years when husband ("Beard") was diagnosed with cancer. In their twenty-third year of marriage, Beard filed a petition for dissolution of marriage. The parties, together, requested that the trial court bifurcate the proceedings, as allowed pursuant to Indiana Code section 31-15-2-14. *Beard*, 758 N.E.2d at 1021. After the completion of phase one, the trial court "entered an order dissolving the parties' marriage and reserving for later decision the issue of property division." *Id*.

Hearings regarding the division of property were held on August 15 and August 25, 2000. The final hearing was scheduled for October 15, 2000; however, Beard died on September 4, 2000, prior to the completion of phase two of the bifurcated proceedings. *Id.* Thereafter, wife filed a motion to dismiss the dissolution proceedings on the basis that Beard's death had divested the dissolution court of jurisdiction; the trial court denied wife's motion. After a hearing, the trial court entered a final decree of dissolution on February 12, 2001, awarding Beard's estate a share of the property that was greater than fifty percent of the total property. *Id.*

[13] Wife appealed and, relying on our court's reasoning in *Johnson*, claimed that the trial court erred in denying her motion to dismiss for lack of jurisdiction. In *Beard*, like in *Johnson*, the court recognized: (1) the existence of the Termination Rule; (2) that our Supreme Court had carved out three exceptions to the Termination Rule; and (3) that "none of the three exceptions applied" to the facts before the court. *Beard*, 758 N.E.2d at 1022. Beard's estate asked to be granted an exception to the general rule that a dissolution action ends upon the death of a party, arguing that "the interests of justice and fairness were best served by the trial court's completion of the dissolution, as the trial court was in the best position to divide the parties' property after having heard all the evidence." *Id.* at 1021. Considering our court's decision in *Johnson*, the *Beard* court was presented with a unique challenge—to respect the limited exceptions our Supreme Court had set out for the Termination Rule and, at the same time,

interpret the meaning of an Indiana statute that allowed for bifurcation of dissolution issues.

[14] The *Beard* court began its analysis by distinguishing that "[h]usband's death after the bifurcation creates a different set of facts than existed in *Johnson.*" *Id.* at 1022. Understanding that it was creating an additional exception to the Termination Rule, the *Beard* court stated that its review would "involve different considerations," but explained that it would employ the same rationale used by appellate courts to arrive at the three exceptions, i.e., "when the equities weighed in favor of allowing a party to recover who would otherwise be injured because the court lost jurisdiction over the dissolution action." *Id.* Of import was the *Beard* court's consideration that the parties to the dissolution had agreed to bifurcate the issues pursuant to Indiana Code section 31-15-2-14 (I.C. § 31-1-11.5-3(a) before its repeal)—a statute that allowed a trial court to complete a dissolution in two separate phases. *Id.* at 1022-23. Recognizing that the dissolution was not complete until the second phase was finished and a final decree entered, the *Beard* court asserted that "the orders entered after the first phase must be valid, binding orders upon which the parties are able to rely in conducting their affairs." *Id.* at 1023. The *Beard* court offered, for example, that it would be appropriate for a party to remarry when the previous marriage was dissolved after phase one of the bifurcated proceedings but before the final decree of dissolution was entered after phase two. *Id.*

[15] The bifurcation statute contemplates that both phases in a bifurcated dissolution proceeding will be completed during the lives of the parties. The *Beard* court,

however, was presented with a question of first impression—"whether the orders entered after the *first phase* [of a bifurcated dissolution proceeding] continue to be valid and binding after the death of a party but before the final decree." *Id*. (emphasis added). The *Beard* court concluded that such first-phase orders remain valid even after the death of a party. Returning to its prior example, the *Beard* court explained, if a party to a dissolution remarries once a dissolution is entered after phase one but dies before the dissolution proceedings are finalized," and if the dissolution "action [was] dismissed and the previous order void, the deceased party would effectively have two 'spouses' who would be competing for their share of the estate." *Id*. at 1023. The *Beard* court opined that such an outcome would defeat the very purpose of having a bifurcated process. Acknowledging that the bifurcation statute had "created a unique two-part proceeding," the *Beard* court concluded that death during the second portion of the proceeding "does not void an order dissolving the parties' marriage entered in the first part of the proceeding. Nor does such a death deprive the trial court of jurisdiction to complete the dissolution action." *Id*. at 1025.

[16] Milana does not suggest that the instant facts fall within the reasoning of *Beard*. Unlike the facts in *Beard*, here, the parties did not agree to bifurcate the issues in the dissolution, and the dissolution action was in its very preliminary stages. Milana had filed with the trial court the Petition, among other motions, but the Guardian Ad Litem had filed no responsive pleadings, and the trial court had held no hearings. Recognizing that *Beard* can be distinguished on the basis of

its bifurcated proceedings, Milana argues that the following rationale from *Beard* still applies: (1) there are more than three exceptions to the Termination Rule; (2) equitable considerations are the driving force behind finding such exceptions; and (3) the facts before us warrant the equitable solution of allowing the trial court to maintain jurisdiction over the instant action.

[17] Referring to the four exceptions, Milana contends that the Termination Rule has been "overtaken by the exceptions to the Rule." *Appellant's Br.* at 18. As support for her contention that the Termination Rule is not universally followed, Milana cites to the following language from *Lizak*, 496 N.E.2d at 43, "[T]his 'general rule' [for dismissal] seems to have been honored more in the breach." *Appellant's Br.* at 8, 11, 17, 19. Milana, however, fails to mention that, except for the awarding of attorney fees in *State ex rel. Paxton*, the remaining three exceptions were recognized only where a decree of dissolution had been entered during the lives of both parties. Here, not only had no decree of dissolution been entered, there had been no hearings on the matter. Even in *State ex rel. Paxton*, where the dissolution decree had not been entered prior to one party's death, our Supreme Court allowed the jurisdiction to remain with the trial court, not for the purpose of completing the dissolution, but to address the issue of attorney fees—an issue that was not related to the merits of the dissolution action. *State ex rel. Paxton*, 467 N.E.2d at 1207. Of further note, even in the exception set forth in *Paxton*, two of the five justices dissented, claiming that attorney fees could not be sought in the dissolution court because "death terminated the dissolution proceedings and the trial court lost its

jurisdiction to make further enforceable orders." *State ex rel. Paxton*, 467 N.E.2d at 1208 (DeBruler, J., dissenting with opinion) (Prentice, J. dissenting).

[18] Contrary to Milana's contention that *Beard* is controlling, we find the instant appeal is on all fours with this court's opinion in *Johnson*. In *Johnson*, husband's estate ("the estate") filed a petition for dissolution of marriage during the parties' third year of marriage, and the trial court took the matter under advisement following a hearing. *Johnson*, 653 N.E.2d at 513. Johnson died before the decree of dissolution was entered. Pursuant to the Termination Rule, wife filed a motion to dismiss based on lack of jurisdiction. *Id*. The estate filed a notice of pendency of probate proceedings and an objection to the motion to dismiss; an appearance was entered on behalf of Johnson's child from a previous marriage, and Johnson's personal representative filed a motion for substitution of party. All pending motions were heard, and the trial court denied wife's motion to dismiss and ordered the parties to file proposed findings of fact and conclusions thereon regarding the distribution of property, assets, and liabilities. *Id*. at 513-14. Eight months after Johnson's death, the trial court denied wife's second motion to dismiss and "entered purportedly *nunc pro tunc* a decree of dissolution and order dividing the marital property." *Id*. at 514.

[19] On appeal, wife argued that the trial court erred in entering the decree of dissolution *nunc pro tunc* because Johnson's death had dissolved the marriage before the trial court had the opportunity to do so. *Id*. Like Milana in the current matter, Johnson's estate, defending the trial court's decision that

jurisdiction continued in the dissolution court,[7] argued that the Termination Rule is not universally followed and the equities of the case dictated that the Rule not be applied in order to protect the children's interest in the property of their father. *Id*. at 514-15. The *Johnson* court rejected the estate's argument, noting that Indiana, like New Jersey, "deems all divorce proceedings terminated upon the death of one of the parties, except in those instances which we already have stated do not apply in the instant case." *Johnson*, 653 N.E.2d at 515. We agree with the *Johnson* court's reasoning.

[20] Again, like Milana's argument in the instant case, Johnson's estate argued that Indiana's Survival Statute, now Indiana Code section 34-9-3-1, reflects Indiana public policy favoring the survival of actions, including dissolution actions. Like the *Johnson* court, we too are not convinced that public policy dictates the survival of the dissolution action under the facts of this case. We agree with the Johnson court's statement:

> We believe the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest. The property settlement is part and parcel of a final decree of dissolution. Once the marriage is ended by the death of one of the parties before the judgment is rendered, no final decree can be attained.

---

[7] Interestingly in *Johnson*, while it was the wife who was appealing, most of the arguments addressed were raised by husband's estate

*Johnson*, 653 N.E.2d at 516 (internal citations omitted).

[21] The *Johnson* court reiterated the general applicability of the Termination Rule, explained that the Rule had only three narrow exceptions, and having found that the *Johnson* facts did not fall into any of the three exceptions, remanded the case to the trial court with instructions to dismiss the dissolution action for lack of jurisdiction. *Id*. Here, the facts of the instant case make an even less compelling case than those in *Johnson* for continuing the dissolution action after Leon's death. In *Johnson*, the trial court entered an order *nunc pro tunc*, the final hearing was held over two days between July 9 and August 16, 1993, and Johnson did not die until September 20, 1993, approximately one month after the evidence had been submitted to the trial court. 653 N.E.2d at 513. Here, no order was ever entered, and the only documents before the trial court were those that had been filed by Milana. Additionally, Milana filed the Petition more than forty-five years after the parties separated, about five years after Leon was diagnosed with dementia, and less than five months before Leon died.

[22] The focus of Milana's argument on appeal is that considerations of equity require the trial court to maintain jurisdiction over the dissolution action, because "depriving a widow of a just and reasonable share of the marital estate would be not less than a gross miscarriage of justice." *Appellant's Br*. at 21. On appeal, Milana does not contend that the termination of the dissolution case deprives her of a remedy, nor could she. Milana has already filed with the probate court an election to take against the will. *Pet'r's Ex*. 3. Instead, Milana argues that where her only remedy is to take against the estate, an estate that is

valued at zero, she will be placed in a less financially advantageous position than she would be if the trial court had jurisdiction to divide the marital property.

[23] Distilled to its essence, Milana contends that the death of a party to a dissolution proceeding should not deprive the trial court of continuing jurisdiction when the surviving spouse may fare better before the dissolution court than it otherwise might in another forum. We find this contention to be untenable. If jurisdiction over a dissolution action was based on the notion that jurisdiction remains in the forum where a party can recover the most, dissolution courts would be unable to determine jurisdiction until judgment had been entered in all pertinent venues. The trial court did not err in dismissing the dissolution action.

[24] Affirmed.[8]

Barnes, J., concurs.

Robb, J., dissents with separate opinion.

---

[8] Milana also contends that Leon's daughter, as Personal Representative of Leon's estate and Trustee of his Trust, should be substituted on appeal to allow Milana to recover her share of the marital estate. Finding, as we do, that the dissolution action was properly dismissed for lack of jurisdiction, we need not address that issue.

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of:

Milana Staletovich Riggs,

*Appellant-Petitioner,*

v.

Leon O. Riggs,

*Appellee-Respondent.*

Court of Appeals Case No.
49A02-1605-DR-1057

**Robb, Judge, dissenting.**

I respectfully dissent. Assuming the facts are as Milana has averred, during the course of the marriage Leon may have placed marital assets in an irrevocable trust that does not benefit Milana. In a dissolution action, it is a basic tenet that all assets of either party, whether owned before marriage, acquired by joint efforts, or acquired by either spouse in his or her own right prior to the parties' final separation are to be included in the marital pot and are subject to division. Ind. Code § 31-15-7-4(a); *Quinn v. Quinn*, 62 N.E.3d 1212, 1223 (Ind. Ct. App. 2016). Through the vagaries of time and nature, however, Leon died before the marital estate could be determined and divided by the dissolution court here. When the dissolution court dismissed Milana's action due to Leon's death, her

only recourse became the probate court – but because Leon placed all his assets in trust, his probate estate has zero assets. In affirming the trial court's dismissal of her dissolution action, the majority has left Milana in a "legal black hole": the dissolution court has no jurisdiction due to Leon's death, and the probate court has no assets to distribute so her claim to entitlement to a portion of those assets will go unheard. Brief of Appellant at 10. This, despite even Leon's counsel acknowledging at the hearing on the motion to dismiss that "due process tell[s] us . . . [y]ou have the right to have the forum within which your argument can be heard." Transcript at 67. Rather than allowing a forum for consideration of the merits in the dissolution court, the majority has effectively determined for itself that on the facts and equities of this case, the ultimate result that Milana take nothing additional from the marital estate is appropriate. *See* slip op. at ¶ 20 (the majority noting it is "not convinced that public policy dictates the survival of the dissolution action under the facts of this case"). I do not believe we can consider the facts and equities of this case without allowing a trial court to hear evidence and consider them first. We are not yet reviewing the result of the process; we are reviewing the process itself. However valid the result might be (that is, that Milana take nothing from Leon's portion of the marital estate), I cannot concur in the majority decision because it short circuits the legal process of arriving at that result.

[26] As the majority notes, *Johnson* states the general rule that divorce proceedings terminate upon the death of one of the parties, and further acknowledges three specific exceptions to that general rule. *See* slip op. at ¶ 19 (citing *Johnson*, 653

N.E.2d at 514-15). In *Beard*, we added a fourth exception, having "learn[ed] from *Johnson* that all three previous exceptions to the common law rule were made when the equities weighed in favor of allowing a party to recover who would otherwise be injured because the court lost jurisdiction over the dissolution action." 758 N.E.2d at 1022. I am less concerned here with the specific facts leading to each exception than I am with the notion that the exceptions acknowledge termination of a dissolution action on the death of one of the parties is not a hard and fast rule. Should we accept the proposition that in all but these four specific instances death brings an immediate end to a dissolution action, we would be creating an inequity for Milana and those similarly situated.[9] The inequity is not necessarily with respect to the result—as I have noted, we are not yet reviewing the result and I acknowledge what we know of the equities from the limited record before us would seem to be against her. Rather, there would be an inequity in not allowing her case to be considered at all by any trial court.

[27] Based on the record at this stage of the proceedings, we do not know when Leon established the trust and what effect that has on the marital estate. The trust could have been established sometime in the forty-plus years the parties were physically separated but not yet legally separated, or it could have been

---

[9] The facts of this case admittedly do not fit within any of the four currently acknowledged exceptions to the Termination Rule. However, the very nature of an exception is that it is crafted to address never-before-seen facts that warrant deviation from the application of a general rule. In other words, that there are only four exceptions to the Termination Rule to date does not mean there can never be more.

after Milana filed her petition for dissolution. Based on the fact that Leon was diagnosed with dementia in 2010, we may assume he established the trust sometime before Milana filed for divorce, but we cannot make a legal determination based on an assumption. As Milana seeks a share of the assets Leon placed in trust, the dissolution court is in the best position to decide what is and is not a marital asset and what would be a just and reasonable division of the marital estate. Ind. Code § 31-15-7-4(b); *see Wireman v. Wireman*, 168 Ind. App. 295, 308-09, 343 N.E.2d 292, 300 (1976) (holding trial court must decide in a dissolution action whether the transfer of property by one spouse was for the purpose of defeating the other spouse's claim to that property because an equitable property settlement can not be made unless all of the property held by the spouses is considered and may set aside the transfer if fraudulent). In short, this case is not yet at a stage where any court can decide the equities, but the dissolution court should have the first opportunity to do so. Accordingly, I would reverse the dissolution court's dismissal of Milana's action.