

FILED

Oct 03 2017, 11:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Marvin Mitchell
Richard J. Dick
Mitchell Dick McNelis, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

R. Brock Jordan
Densborn Blachly LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Milana Staletovich Riggs,

*Appellant-Claimant,*

v.

Cynthia Hill, in her capacity as the Personal Representative of the Estate of Leon O. Riggs,

*Appellee-Respondent*

October 3, 2017

Court of Appeals Case No. 49A02-1703-EU-458

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

Trial Court Cause No. 49D08-1601-EU-2099

**Baker, Judge.**

[1] Milana Stelatovich Riggs was married to Leon Riggs in 1968. In 1969, a Mexican court issued a document purporting to dissolve their marriage. In 1973, Milana and Leon filed cross-petitions to dissolve the marriage; neither petition was resolved. In 1977, Leon filed a declaratory judgment action seeking a declaration as to the validity of the Mexican dissolution document; this pleading also remained unresolved. From 1970 until 2015, Leon filed his taxes as a single individual and structured his finances and business as though he were single. In 2015, after Leon had been suffering from dementia for some time, Milana filed a petition to dissolve the marriage. Before that proceeding could be resolved, Leon died. After his death, Milana filed an election to take against the will as a surviving spouse in the probate action. The personal representative of Leon's estate filed a motion for summary judgment, arguing that Milana was barred by equitable doctrines from electing to take against the will as a surviving spouse.

[2] The probate court granted summary judgment in favor of the personal representative, and Milana now appeals. She argues that the probate court erroneously struck some of her designated evidence based upon the Dead Man's Statute and that summary judgment is not warranted on the doctrine of laches. Finding no error, we affirm.

## Facts

[3] As this court explained in a related dissolution appeal, "Leon and Milana were married in April 1968, and they lived together as husband and wife for one

year.  In April 1969, the couple separated and never again lived together.  There were no children of the marriage."  *Riggs v. Riggs*, 49A02-1605-DR-1057, slip op. p. 2 (Ind. Ct. App. May 22, 2017), *trans. denied*.

[4]     In 1969, Milana went to Mexico and met with an attorney.  A Mexican court issued a divorce decree in December 1969.  In 1969, Leon's tax filing status was married; from 1970 until his death in 2015, his filing status was single.  In 1973, Milana filed a petition in Indiana to dissolve the parties' marriage; Leon filed a cross-claim seeking the same relief.  In 1977, Leon filed a complaint for a declaratory judgment seeking a determination of the validity of the Mexican divorce decree.  Neither the 1973 nor the 1977 actions proceeded to an ultimate determination, leaving open the question of the validity of the Mexican decree.

[5]     In 2015, Milana filed another petition to dissolve the marriage.  By that time, Leon was suffering from dementia, required constant care, and was not competent to participate in the dissolution action.  *Id.*  Leon died testate on December 4, 2015; at the time of his death, no dissolution decree had been entered.  The trial court dismissed the dissolution action for lack of jurisdiction following Leon's death; Milana appealed that determination and this Court affirmed.  *Id.*

[6]     Following Leon's death, Leon's daughter, Cynthia Hill, was appointed personal representative of his estate (the Personal Representative).  On February 24, 2016, Milana filed an election to take against Leon's will, claiming to have been married to Leon at the time of his death, renouncing all provisions in his will,

and electing to take her legal share in his estate. She also filed claims against his estate, seeking compensation under five separate theories.

[7] On March 29, 2016, the Personal Representative filed a motion to strike Milana's election to take against the will, and on May 6, 2016, the probate court agreed to treat the motion as a summary judgment motion. In the summary judgment motion, the Personal Representative argued that the equitable doctrines of laches, unclean hands, and equitable estoppel prevent Milana from taking against the will as Leon's surviving spouse.

[8] Milana responded in opposition to summary judgment, designating her own affidavit and portions of her deposition from the 1970s litigation in support. The Personal Representative moved to strike Milana's affidavit and deposition pursuant to the Indiana Dead Man's Statute. The probate court granted the motion to strike. Milana also filed a cross-motion for summary judgment on October 20, 2016, arguing that she is entitled to relief on her election against the will as a matter of law and that the Personal Representative is estopped from arguing that the Mexican divorce decree was valid.

[9] Following a hearing, the probate court granted the Personal Representative's summary judgment motion and denied Milana's cross-motion for summary judgment on February 14, 2017. In relevant part, the probate court found and concluded as follows:

> The Court agrees with the Personal Representative's position that the issue before this court is not to determine whether or not the Mexican decree is valid. The issue before the

court is whether or not Milana or the estate are barred from seeking or contesting the spousal election as a result of the application of the equitable doctrines of laches, estoppel, or unclean hands.

***

. . . The personal representative has failed to show Milana's claim is barred by estoppel or unclean hands.

The deciding issue in this case is whether or not Milana is barred from claiming against the estate as the surviving spouse under the doctrine of laches.

***

Milana and Leon recognized questions about the Mexican decree as evidenced by her decision to file for divorce and Leon's Cross Claim for divorce in 1973, Leon's action for Declaratory Judgment in 1977, and the 2015 dissolution action. . . . [Milana] correctly asserts that even if she questioned the validity of the Mexican divorce, she had no duty to bring an action to determine its validity. However, the Court states again that the issue here is not the validity of the Mexican divorce. A determination of the issues in this case will not establish a marriage exists or a divorce occurred through laches, estoppel or unclean hands.

Milana filed an action for dissolution in 1973, which was not resolved. She was a party to an action to determine if the Mexican divorce was valid in 1977, which was not resolved. She was aware of an issue of the unresolved status of her and Leon's marital status. Thirty-five years [passed] before Milana brought a second dissolution action, which was resolved . . . by Leon's death. The Court therefore concludes that under these

circumstances the doctrine of laches bars Milana's claim as a surviving spouse.

Considering Milana's motion for summary judgment the court concludes that the estate is not asserting a claim against Milana, and therefore the estate is not barred from contesting her claim to take against the will as the surviving spouse.

Appealed Order p. 2-3. Milana now appeals.

# Discussion and Decision

## I. Motion to Strike

Milana first argues that the probate court erroneously granted the Personal Representative's motion to strike the affidavit and deposition she designated in opposition to the summary judgment motion. The decision to admit or exclude evidence is within the trial court's sound discretion, and we will reverse only if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *E.g.*, *Stowers v. Clinton Cent. Sch. Corp.*, 855 N.E.2d 739, 749 (Ind. Ct. App. 2006).

The trial court struck Milana's affidavit and deposition based on the Dead Man's Statute, which provides, in relevant part, that "a person: (1) who is a necessary party to the issue or record; and (2) whose interest is adverse to the estate; is not a competent witness as to matters against the estate." Ind. Code § 35-45-2-4(d). Our Supreme Court has explained that this statute "establishes as a matter of legislative policy that claimants to the estate of a deceased person should not be permitted to present a court with their version of their dealings

with the decedent." *In re Estate of Rickert*, 934 N.E.2d 726, 731 (Ind. 2010). The central purpose of the Dead Man's Statute "is to ensure that when one party to a transaction has had her lips sealed by death the other party's lips are sealed by law." *Taylor v. Taylor*, 643 N.E.2d 893, 896 (Ind. 1994).

[12] In *In re Sutherland's Estate*, our Supreme Court considered a case in which a decedent's survivor asked for a determination of heirship so that she could share in the decedent's estate. 246 Ind. 234, 204 N.E.2d 520 (Ind. 1965). The survivor alleged that a common law marriage existed between her and the decedent and that she should be allowed to inherit as his wife. In support of her claim of a common law marriage, the survivor offered her own testimony about her history and relationship with the decedent. Our Supreme Court found that the trial court erred by permitting her to testify in this regard:

> Testimony of the appellee as to 'any matter' which occurred prior to the death of the decedent is excluded under this statute. This includes transactions or actions as well as conversations.

> One of the objects of these statutes is to prevent a person from testifying against an estate as to acts or conversations of the decedent when his lips are sealed by death. It is, in fact, a statute for the prevention of fraud.

> To say that 'the litigation herein is not for the purpose of obtaining a judgment or allowance for or against the estate of the decedent' is not true. It is the very purpose of the appellee, as widow in this proceeding, to gain a widow's share in the estate. What she would gain would even have priority over the claims of creditors who are likewise incompetent to testify under the same statute. It does affect the amount to be distributed by the estate.

*Id.* at 240-41, 204 N.E.2d at 523. In other words, the Dead Man's Statute prohibits the testimony of an alleged surviving spouse about her relationship with the decedent where she is seeking to inherit a portion of the decedent's estate. *See also Taylor*, 643 N.E.2d at 896 (holding that, absent waiver of the right to raise the Dead Man's Statute, a surviving spouse's election to take against the will would render her testimony incompetent). We decline Milana's invitation to consider the *Sutherland* opinion to be outdated and/or no longer good law. It is apparent that our Supreme Court still considers the *Sutherland* holding to be good law, inasmuch as it echoed that rule in *Taylor*, albeit without citing to *Sutherland* in support. *Id.*

[13] Milana argues that, even if the Dead Man's Statute applies and renders her testimony incompetent, the Personal Representative has waived the argument. Milana notes that the Personal Representative initially included argument regarding Milana's deposition in her memorandum in support of the motion to strike Milana's election to take against the will. Milana acknowledges, however, that the Personal Representative withdrew the motion, which necessarily also withdrew the memorandum in support. According to Milana, only the motion and not the accompanying memorandum was withdrawn, but we find that this argument elevates form over substance to an untenable degree. Because the motion and memorandum in support were withdrawn, the Personal Representative has not waived the right to raise the Dead Man's Statute. Accordingly, the probate court did not err by granting the Personal Representative's motion to strike Milana's affidavit and deposition.

## II. Summary Judgment

[14] Milana raises several arguments with respect to the trial court's summary judgment order. Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[15] Milana first argues that the trial court erred by granting summary judgment in favor of the Personal Representative based upon the doctrine of laches. The doctrine of laches may be raised to prevent a person from asserting a claim that he or she would normally be entitled to assert. *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1007 (Ind. Ct. App. 2011). Laches is "neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done." *Id.* The rationale behind the doctrine of laches is as follows:

> [A] person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to

assert a claim when the delay prejudices the person against whom she would assert it. Laches requires evidence of (1) inexcusable delay in asserting a right; (2) an implied waiver arising from a knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party.

*Id.*

[16]     In this case, the following facts are undisputed:

- In 1969, Milana went to Mexico. While she was there, she met with an attorney and discussed the dissolution of her marriage to Leon. The result of that trip was a Mexican document purporting to dissolve the marriage.
- Beginning in 1970 and continuing until his death in 2015, Leon's tax filing status was single. He structured his estate and business succession plans based upon an assumption that he was single.
- In 1973, Milana filed a petition in Indiana to dissolve their marriage. Leon filed a cross-petition seeking the same relief. This proceeding was not litigated to a final judgment.[1]
- In 1977, Leon filed a declaratory judgment action seeking a declaration as to the validity of the Mexican document. This proceeding was not litigated to a final judgment.
- In 2015, after Leon was suffering from dementia and in the final months of his life, Milana filed a petition to dissolve the marriage.

---

[1] Milana argues that because she, rather than the Personal Representative, designated evidence regarding the 1970s litigation in the summary judgment proceedings, the probate court should not have relied on it in determining whether summary judgment was warranted. We disagree. There is no genuine dispute as to the existence of either the 1973 or 1977 legal proceedings and they were in the record before the probate court; therefore, the probate court did not err by relying on this evidence.

We agree with the trial court that whether or not the Mexican document is a valid dissolution of marriage order is not a question that we need to (or could, based on this record) answer. Instead, we must determine the effect of that document over the ensuing decades.

[17] Milana seeks to claim a share of Leon's estate as his surviving spouse. But she has known for over four decades that the legal status of their marriage was, at the least, unresolved. Had she wanted to assert a claim that she has legal rights as Leon's spouse (and is also saddled with the concomitant legal responsibilities), she should have done so years, if not decades, ago. Based on that evidence, the following is true as a matter of law:

- Forty-six years is an inexcusable delay for Milana to assert her rights as Leon's legal spouse.
- Milana knew that the legal status of her marriage was unresolved (as evidenced by the 1970s litigation), and acquiesced to the legally unsettled nature of that relationship, thereby impliedly waiving her right to claim that she is Leon's legal spouse.
- For forty-five years, Leon conducted his finances and business under the assumption that he was single. Additionally, by the time Milana filed her final petition to dissolve the marriage, Leon was suffering from severe dementia, and by the time she finally sought to claim her rights as his legal spouse, he was dead. All of this together constitutes a change in circumstances causing prejudice to Leon.

In other words, the undisputed evidence fulfills all elements of a laches claim. Therefore, we find that the probate court did not err by finding that the material facts are undisputed and that the Personal Representative is entitled to judgment as a matter of law based upon the doctrine of laches.

[18] Because we find that summary judgment was properly granted in the Personal Representative's favor on the issue of laches, we need not consider Milana's remaining arguments with respect to the Personal Representative's summary judgment motion. We will, however, briefly address her claim that the trial court should have granted her cross-motion for summary judgment based upon the doctrine of judicial estoppel. The doctrine of judicial estoppel provides that, "absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation." *Morgan Cty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008) (internal quotation omitted).

[19] Milana observes that in 1973, Leon admitted that he was married when he filed his cross-petition to dissolve the marriage. She argues that his estate should now be estopped from arguing that he was not married at the time of his death. But the Personal Representative has never argued that Leon was legally divorced from Milana. Instead, she has consistently maintained that it is irrelevant whether the Mexican document was valid or void, contending that the dispositive issue is "whether various equitable doctrines preclude Milana from seeking a spousal election based on her unreasonable delay in seeking an adjudication of the Divorce Decree's validity." Appellee's Br. p. 33. We agree, and decline to apply judicial estoppel under these circumstances.[2]

---

[2] Milana also argues that the probate court was required to grant her cross-motion because the Personal Representative did not designate any evidence in opposition. But "[i]t is well-settled that a trial court is not

The judgment of the probate court is affirmed.

Bailey, J., and Altice, J., concur.

---

required to grant an unopposed motion for summary judgment." *Techna-Fit, Inc. v. Fluid Transfer Prods., Inc.*, 45 N.E.3d 399, 409 (Ind. Ct. App. 2015). Therefore, we decline to reverse on this basis.